CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

December 05, 2024

LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

WASHINGTON CIRCUIT                    Case No.:CL24001888-00

DOE, JANE                    vs.    EMORY & HENRY UNIVERSITY

| TABLE OF CONTENTS | | |
|---|---|---|
| Document Index | Date Filed | Page |
| **Manuscripts:** | | |
| INITIAL FILING - GTOR: | 10/22/2024 | 1 - 16 |
| COVER SHEET | 10/22/2024 | 17 - 18 |
| EMORY & HENRY UNIVERSITY - WASH | 10/23/2024 | 19 - 37 |
| NOTICE - FILING NOTICE OF REMOVAL | 11/15/2024 | 38 - 64 |
| NOTICE - OF SERVICE | 11/15/2024 | 65 - 93 |
| ORDER | 11/26/2024 | 94 - 94 |

I, Tricia Moore, Clerk of the Washington Circuit, certify that the contents of the record listed in the table of contents constitute the true and complete record, except for exhibits whose omission are noted in the table of contents.

WASHINGTON CIRCUIT                        Case No.:CL24001888-00

DOE, JANE                        vs.        EMORY & HENRY UNIVERSITY

| TABLE OF CONTENTS | | |
|---|---|---|
| Document Index | Date Filed | Page |
| **Manuscripts:** | | |
| INITIAL FILING - GTOR: | 10/22/2024 | 1 - 16 |
| COVER SHEET | 10/22/2024 | 17 - 18 |
| EMORY & HENRY UNIVERSITY - WASH | 10/23/2024 | 19 - 37 |
| NOTICE - FILING NOTICE OF REMOVAL | 11/15/2024 | 38 - 64 |
| NOTICE - OF SERVICE | 11/15/2024 | 65 - 93 |
| ORDER | 11/26/2024 | 94 - 94 |

I, Tricia Moore, Clerk of the Washington Circuit, certify that the contents of the record listed in the table of contents constitute the true and complete record, except for exhibits whose omission are noted in the table of contents.

**V I R G I N I A:**

## IN THE CIRCUIT COURT FOR WASHINGTON COUNTY

| | |
|---|---|
| **JANE DOE,** | |
| **Plaintiff,** | Case No. __24-1888__ |
| **v.** | **JURY TRIAL DEMANDED** |
| **EMORY & HENRY UNIVERSITY,** c/o Mark R. Graham (registered agent) 30461 Garnand Drive, Emory, Virginia 24327-2500, | |
| **Defendant.** | |

## COMPLAINT

Emory & Henry University did not want sixty year old equestrian coach – it wanted one thirty years younger. The University desperately wanted a pretext that it could use to replace Plaintiff with a younger employee, and finally got what it wanted when a false Title IX complaint was filed against Ms. Doe. When the University was already communicating about her replacement, the University received this complaint and jumped into action, terminating Ms. Doe within days of receiving the complaint. In doing so, the University completely ignored federal regulations enforcing Title IX and instead summarily terminated her. Accordingly, Ms. Doe brings this civil action against Defendant for violations of the Age Discrimination in Employment Act ("ADEA"), the Virginia Human Rights Act ("VHRA"), negligence, and negligence *per se*. For her Complaint against Defendant, Jane Doe states as follows:

1

## Parties

1.     Jane Doe ("Ms. Doe") was an assistant clinical professor or equine studies at the University. She is sixty-one years old.

2.     Emory & Henry University (the "University") is a private higher education institution located in Washington County, Virginia.

## Jurisdiction and Venue

3.     Subject matter jurisdiction is proper in the Commonwealth of Virginia and the Circuit Court of Washington County because the amount in controversy exceeds $25,000.

4.     This Court possesses personal jurisdiction over the University by virtue of its domicile and its transacting business in the Commonwealth. Va. Code § 8.01-328.1(A).

5.     Venue is proper in this Court because all causes of action arose in Washington County, Virginia. Va. Code § 8.01-262.

## The University's Background

6.     Institutions of higher education are required by law, as interpreted by the United States Supreme Court, to adjudicate claims of sexual harassment under the auspices of Title IX.

7.     Title IX is a federal statute prohibiting discrimination on the basis of sex for all persons in educational institutions that receive federal funding. *See* 20 U.S.C. § 1681.

8.     The University receives federal funding. Withdrawal of federal funding by the U.S. Department of Education would be financially ruinous for the University.

9.     The University maintains a Title IX Office.

10.     The University's Title IX personnel, including Title IX Coordinator Yancey Wilmoth, received training on the controlling Title IX regulations.

11.     The University's Human Resources Office, including Director of Human Resources Tracy Peery, also received training on the controlling Title IX regulations.

**Federal Title IX Regulations and University Policy**

12.     In May of 2020, the U.S. Department of Education promulgated regulations interpreting Title IX, codified at 34 C.F.R. 106, titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance."

13.     The U.S. Department of Education interpreted the effective date to mean that the regulations applied to all reports of sexual harassment (construed broadly to include allegations of sexual assault and other offenses) concerning conduct occurring on or after August 14, 2020.

14.     The federal regulations applied to this matter because, among other things, John Roe alleged conduct occurring exclusively in the year 2023.

15.     The federal regulations set forth procedural requirements for the University's adjudication of Title IX matters. Accordingly, the University is required by the regulations to adopt these procedural provisions in its own policies and procedures, for use in student-on-student sexual misconduct complaints.

16.     The University adopted the regulations' procedural requirements, as reflected in the University's "Title IX and Sexual Harassment Policy" ("Policy"), which states that the Policy is intended to "meet the University's obligations" under Title IX.

17.     Therefore, the University is not at liberty to substantially alter its Policy without federal regulatory change. Rather, in exchange for federal funding and the payment of tuition by students (without which the University would not exist or be in a position to receive federal funding), the University has agreed to be bound by its regulation-compliant Policy.

18.     Under the 2020 regulations, the University is obligated to respond to a "formal complaint" of sexual harassment in a way compliant with the grievance process outlined in 34 C.F.R. §106.45.

19.     The term "formal complaint" is defined by 34 C.F.R. §106.30 as, in relevant part, "a document filed by a complainant or signed by the Title IX Coordinator alleging sexual harassment against a respondent and requesting that the recipient investigate the allegation of sexual harassment."

20.     The Department requires that a "formal complaint" be filed, and the grievance process at 34 C.F.R. §106.45 be completed, before "the imposition of any disciplinary sanctions or other actions that are not supportive measures." 34 C.F.R. §106.44(a).

21.     The 34 C.F.R. 106.45 grievance process, in the context of postsecondary educational institutions receiving federal funding, requires that a University provide

4

formal notice of the allegations against the respondent before any investigation, generate an investigative report, hold a live hearing with cross examination, and contain an appeal process before any discipline is imposed, among other things. *See generally* 34 C.F.R. §106.45(b).

22.    "Each of the procedural requirements in § 106.45 is prescribed because the Department views the requirement as important to ensuring a fair process for both parties rooted in the fundamental due process principles of notice and meaningful opportunities to be heard." 85 Fed. Reg. 30053.

23.    The term "formal complaint" has a static and defined meaning. If, for example, a recipient of federal funds could avoid the requirements of 34 C.F.R. §106.45 simply by labeling a complaint "informal," the entire regulatory scheme would unravel. Any college or university could use this method to simply avoid ever using the 34 C.F.R. §106.45 grievance process.

## Background of Ms. Doe and John Roe

24.    Following a professional equestrian career, Ms. Doe began employment at the University in the Spring of 2023 as an assistant clinical professor in the equestrian program.

25.    Ms. Doe replaced an employee who repeatedly drank to excess on the job but was never disciplined.

26.    Ms. Doe never received any negative performance reviews during the entirety of her employment at the University.

27.     Ms. Doe thoroughly enjoyed teaching and built positive relationships with all of her students, absent any complaints from any of her students.

28.     John Roe was one of many students, male and female, who had a friendly professional relationship with Ms. Doe.

29.     John Roe was somewhat of a class clown whose company was enjoyed by other students and Ms. Doe. He frequently made jokes with his fellow students and Ms. Doe.

### The Anonymous Title IX Complaint

30.     According to the University, on or around October 27, 2023, an employee at the University submitted an Title IX complaint against Ms. Doe.

31.     On October 31, 2023, the University sent Ms. Doe an email seeking an interview related to the "informal complaint of sexual harassment." The University did not tell Ms. Doe the substance of the complaint or who made the complaint. Eventually, however, she would discover that the complaint alleged that John Roe had been made "uncomfortable" by texts and "photos" from Ms. Doe.

32.     John Roe never filed any complaint himself.

33.     Nor did Ms. Doe ever send any sexual or inappropriate texts or photos (or anything else sexual whatsoever) to John Roe or any other student. While she texted many of her students and sent equestrian related photos, there was never anything remotely sexual about any of Ms. Doe's behavior with her students.

### The University Conducts its "Informal" Investigation For A Week

34.    Ms. Doe sat for an interview on November 1, 2023. At that interview, both Yancey Wilmoth and Tracy Peery were present.

35.    Both Wilmoth and Peery, having been trained in Title IX, knew that the "notice" sent to Ms. Doe seeking the interview was not complaint with federal regulations interpreting Title IX.

36.    In fact, Wilmoth and Peery referred to the complaint against Ms. Doe as an "informal complaint." But the term "informal complaint" does not appear in University Policy.

37.    The term "informal complaint" is created out of whole cloth for the sole purpose of disclaiming the regulations' requirement that a recipient follow 34 C.F.R. §106.45 in response to a "formal complaint." Wilmoth and Peery, having been trained in Title IX, knew that a "formal complaint" must be adjudicated according to 34 C.F.R. §106.45, and they referred to the complaint against Ms. Doe as an "informal complaint" for the sole purpose of avoiding the regulations.

38.    Indeed, according to federal regulation, a Notice of Allegations must, among other things, "include the identities of the parties involved in the incident, if known, [and] the conduct allegedly constituting sexual harassment under § 106.30, and the date and location of the alleged incident, if known." 34 C.F.R. §106.45(b)(2)(B).

39.    Further, "the written notice must inform the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney, under

paragraph (b)(5)(iv) of this section, and may inspect and review evidence under paragraph (b)(5)(vi) of this section." *Id.*

40.    A Notice of Allegations must also "inform the parties of any provision in the recipient's code of conduct that prohibits knowingly making false statements or knowingly submitting false information during the grievance process." *Id.*

41.    The federal government's purpose in drafting §106.45(b)(2) was that "[f]undamental fairness and due process principles require that a respondent knows the details of the allegations made against the respondent, to the extent the details are known, to provide adequate opportunity for the respondent to respond."[1]

42.    The "informal" "notice" contained none of the required elements cited above. Instead, it merely said that due to "the nature of the complaint" Ms. Doe's "presence will … be required" at an interview.

43.    During the interview, Ms. Doe was subjected to treatment that one would find in a Franz Kafka novel. Wilmoth and Peery were extremely hostile towards Ms. Doe; they interrogated her about a complaint where Ms. Doe did not know the details of the complaint. At the same time, they demanded confessions from Ms. Doe and accused her (without evidence) of deleting evidence in bad faith.

44.    At the close of the interview, Ms. Doe offered to provide witnesses, among other things, to Wilmoth and Peery. Wilmoth and Peery told Ms. Doe "that's

---

[1] Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30133 (May 19, 2020).

good" and "that's what you're supposed to be doing." At a minimum, Wilmoth and Peery never instructed Ms. Doe to not reach out to witnesses.

45.    Nor could they, because federal regulations protect Ms. Doe's right to gather and present evidence and witnesses. 34 C.F.R. §106.45(b)(5)(iii) (schools may not restrict the ability of parties to gather evidence).

46.    But when Ms. Doe submitted witnesses to Wilmoth and Peery or was otherwise gathering witnesses and evidence in the days following the interview, Peery reprimanded her. Peery emailed Ms. Doe that she needed to "stop reaching out to students asking them to be witnesses for you." She continued (as if gathering witnesses to support her innocence was a violation in itself): "I have evidence that you have been doing so and have violated the confidentiality of the investigation. Your actions are unprofessional and need to stop."

47.    When Peery sent this email, she knew that Ms. Doe had the right to gather witnesses and that the University could not even prohibit her from discussing the investigation. 34 C.F.R. §106.45(b)(5)(iii). But she chose to intimidate Ms. Doe anyway.

48.    University Policy and federal law afford Ms. Doe the right to be presumed "not responsible" throughout the investigation and adjudication.

49.    Obviously, the University did not presume Ms. Doe not responsible. It presumed her responsible and interrogated her with that presumption in mind.

50.    The University took less than one week to adjudicate the "informal" complaint against Ms. Doe. It found her responsible for the allegation against her.

9

51.    In a meeting on November 8, 2023, Ms. Doe was notified that she was terminated from employment because of the findings of the investigation. She was immediately escorted by security to clean out her desk, and was marched off of campus.

52.    During the November 8 meeting, Peery insisted (in a transparent attempt to skirt liability) that Ms. Doe was terminated "at will" despite the findings against her.

## Ms. Doe Discovers Additional Context and Exhausts Remedies

53.    After Ms. Doe was terminated, she discovered from at least three witnesses with knowledge that the University intended to replace her with a younger employee before the Title IX allegations were ever made.

54.    Although the University posted the job posting on November 14, 2023, it had communications with Ms. Doe's replacement before the job was posted publicly.

55.    Ms. Doe was indeed replaced by this employee, who is thirty years Ms. Doe's junior.

56.    Ms. Doe filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights on March 7, 2024.

57.    She received a Notice of Right to Sue from the EEOC on July 25, 2024. This Notice also suffices as a Notice of Right to Sue under the VHRA. Va. Code §2.2-3907(I).

## The University Continues to Punish Ms. Doe

10

58.    As a result of the University's wrongful finding and termination, Ms. Doe suffers severe emotional, psychological, and financial harm.

59.    While suffering this harm, and having to deal with the unexpected loss of income, Ms. Doe sought unemployment from the North Carolina Department of Commerce.

60.    As the University had repeatedly told her on November 8, Ms. Doe represented to the North Carolina agency that she had been terminated "at will" and not "for cause." The former would entitle her to unemployment income whereas the latter would not.

61.    In a remarkable showing of contempt towards Ms. Doe, the University opposed Ms. Doe's request for unemployment. At a hearing, counsel for the University testified and argued for the first time that Ms. Doe was not terminated "at will" and instead because she sexually harassed a student.

62.    Appearing pro se, Ms. Doe testified at the hearing, and successfully obtained unemployment income. The North Carolina agency further made findings of fact that, among other things, "[Ms. Doe] did not sexually harass anyone during her tenure at with Emory & Henry College."


## CAUSES OF ACTION

### COUNT I
### Age Discrimination in Violation of the ADEA

63.    Ms. Doe incorporates all prior allegations as if fully stated herein.

64.   Ms. Doe was an employee over 40 years of age at the University, entitling her to rights under the federal Age Discrimination in Employment Act ("ADEA").

65.   The University is required to abide by ADEA's prohibition on age discrimination.

66.   The University discriminated against Ms. Doe on the basis of age by terminating her in violation of federal law and its policies and then replacing her with a younger employee.

67.   Ms. Doe is protected by ADEA from discrimination on the basis of her age.

68.   Ms. Doe was qualified for her position at the University.

69.   Ms. Doe suffered adverse employment actions, including but not limited to her firing.

70.   She was replaced by a younger employee.

71.   There is no legitimate nondiscriminatory reason for the University's behavior.

72.   Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

73.   Ms. Doe has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against her.

74.   She requests liquidated damages under the ADEA.

## COUNT II

12

## Age Discrimination in Violation of the VHRA

75.    Ms. Doe incorporates all prior allegations as if fully stated herein.

76.    Ms. Doe was an employee over 40 years of age at the University, entitling her to rights under the Virginia Human Rights Act.

77.    The University is required to abide by ADEA's prohibition on age discrimination.

78.    The University discriminated against Ms. Doe on the basis of age by terminating her in violation of federal law and its policies and then replacing her with a younger employee.

79.    Ms. Doe is protected by VHRA from discrimination on the basis of her age.

80.    Ms. Doe was qualified for her position at the University.

81.    Ms. Doe suffered adverse employment actions, including but not limited to her firing.

82.    She was replaced by a younger employee.

83.    There is no legitimate nondiscriminatory reason for the University's behavior.

84.    Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

85.    Ms. Doe has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against her.

86.    She seeks compensatory and punitive damages, and any other available relief, under the VHRA.

## COUNT III
### Negligence *Per Se*

87.    Ms. Doe incorporates all prior allegations as if fully stated herein.

88.    The United States Department of Education promulgated regulations interpreting Title IX, codified at 34 C.F.R. 106, titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance."

89.    34 C.F.R. 106 is a binding regulation on the University.

90.    34 C.F.R. 106 was enacted for public safety. Specifically, the regulations were designed to both protect victims of sexual harassment and to protect students and faculty accused of sexual harassment.

91.    Ms. Doe, as a faculty member, belonged to the class of persons the regulations were designed to protect.

92.    The University's violations of 34 C.F.R. 106 were a proximate cause of the injury to Ms. Doe, because the violations produced the harm to Ms. Doe and no efficient intervening cause exists that would have caused the harm to Ms. Doe.

93.    As a result of the University's breach of 34 C.F.R. 106, Ms. Doe suffers and continues to suffer substantial financial harm. Accordingly, Ms. Doe requests compensatory, incidental, and emotional damages.

## COUNT IV
### Negligence

94.    Ms. Doe incorporates all prior allegations as if fully stated herein.

95.     In choosing to accept federal funding and adjudicate matters of sexual misconduct, the University assumed a duty to conduct its sexual misconduct proceedings with reasonable care under the circumstances, to avoid foreseeable harm to students or faculty subject to its procedures.

96.     It was foreseeable that Ms. Doe would be harmed by the University's complete and total disregard of its own Title IX procedures.

97.     The University breached its duty to Ms. Doe when it subjected her to the Title IX process and failed to abide by its own procedures, and otherwise conducted itself in a biased or partial manner.

98.     The University's action was a proximate cause of Ms. Doe's injury, because Ms. Doe's injury would not have occurred absent the University's action, and because no efficient intervening cause exists that would have caused the harm to Ms. Doe.

99.     As a result of the University's breach of its duty, Ms. Doe suffers and continues to suffer substantial financial harm. Accordingly, Ms. Doe requests compensatory, incidental, and emotional damages.

## JURY DEMAND

100.    Doe demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE Doe respectfully requests that this Court grant him the following relief against all Defendants:

1. Liquidated damages under the ADEA;

2. Other damages in an amount to be proved at trial;

3. Costs of suit;

4. Attorneys' fees, pursuant to 42 U.S.C § 1988(b); and

5. Such other and further relief as the Court deems necessary and proper.

Dated: October 22, 2024

Jane Doe
By Counsel

BINNALL LAW GROUP, PLLC

Benjamin North, VSB No. 97439
Lindsay R. McKasson, VSB No. 96074
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: ben@binnall.com
         lindsay@binnall.com

*Counsel for Plaintiff Jane Doe*

16

# COVER SHEET FOR FILING CIVIL ACTIONS

Case No. ......................................

(CLERK'S OFFICE USE ONLY)

COMMONWEALTH OF VIRGINIA

............................ Washington County ............................ Circuit Court

.......... Jane Doe .......... v./In re: .......... Emory & Henry University ..........

PLAINTIFF(S)                                              DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL

**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
  [ ] Monetary Damages
  [ ] No Monetary Damages
[ ] Counterclaim
  [ ] Monetary Damages
  [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court

**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment

**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
  [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights

**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[x] Other General Tort Liability

## ADMINISTRATIVE LAW

[ ] Appeal/Judicial Review of Decision of (select one)
  [ ] ABC Board
  [ ] Board of Zoning
  [ ] Compensation Board
  [ ] DMV License Suspension
  [ ] Employee Grievance Decision
  [ ] Employment Commission
  [ ] Local Government
  [ ] Marine Resources Commission
  [ ] School Board
  [ ] Voter Registration
  [ ] Other Administrative Appeal

## DOMESTIC/FAMILY

[ ] Adoption
  [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
  [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
  [ ] Complaint – Contested*
  [ ] Complaint – Uncontested*
  [ ] Counterclaim/Responsive Pleading
  [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
  [ ] Separate Maintenance Counterclaim

## WRITS

[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS

[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
  [ ] Guardian/Conservator
  [ ] Standby Guardian/Conservator
  [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
  [ ] Impress/Declare/Create
  [ ] Reformation
[ ] Will (select one)
  [ ] Construe
  [ ] Contested

## MISCELLANEOUS

[ ] Amend Birth/Death Certificate
[ ] Appointment (select one)
  [ ] Church Trustee
  [ ] Conservator of Peace
  [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
  [ ] Reinstatement pursuant to § 46.2-427
  [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
  [ ] Correct Erroneous State/Local
  [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

**FILED**
OCT 23 2024
DEPUTY CLERK CIRCUIT COURT
WASHINGTON COUNTY, VA

[x] Damages in the amount of $ 550,000.00 ............................ are claimed.

10/21/2024
DATE

[ ] PLAINTIFF    [ ] DEFENDANT    [ ] ATTORNEY FOR    [x] PLAINTIFF
                                            [ ] DEFENDANT

Benjamin F. North
PRINT NAME

717 King St. Suite 300, Alexandria VA 22314
ADDRESS TELEPHONE NUMBER OF SIGNATOR

ben@binnall.com

EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

FORM CC-1416 (MASTER) PAGE ONE  02/23

17

## Civil Action Type Codes
### (Clerk's Office Use Only)

Accounting .................................................. ACCT
Adoption ...................................................... ADOP
Adoption – Foreign ...................................... FORA
Adult Protection ........................................... PROT
Aid and Guidance ........................................... AID
Amend Birth/Death Certificate ..................... AVR
Annexation .................................................. ANEX
Annulment ................................................... ANUL
Annulment – Counterclaim/Responsive Pleading .. ACRP
Appeal/Judicial Review
    ABC Board ............................................. ABC
    Board of Zoning .................................. ZONE
    Compensation Board ........................ ACOM
    DMV License Suspension ........................ JR
    Employment Commission ..................... EMP
    Employment Grievance Decision ......... GRV
    Local Government ............................. GOVT
    Marine Resources .............................. MAR
    School Board ........................................... JR
    Voter Registration ............................. AVOT
    Other Administrative Appeal ............. AAPL
Appointment
    Conservator of Peace ........................... COP
    Church Trustee ................................... AOCT
    Custodian/Successor Custodian (UTMA) .. UTMA
    Guardian/Conservator ....................... APPT
    Marriage Celebrant .......................... ROMC
Approval of Transfer of Structured Settlement ....... SS
Asbestos Litigation ............................................. AL
Attachment ..................................................... ATT
Bond Forfeiture Appeal .................................. BFA
Child Abuse and Neglect – Unfounded Complaint .. CAN
Civil Contempt ............................................ CCON
Claim Impleading Third Party Defendant –
  Monetary Damages/No Monetary Damages ......... CTP
Complaint – (Miscellaneous) ......................... COM
Compromise Settlement .............................. COMP
Condemnation ............................................ COND
Confessed Judgment ........................................ CJ
Contract Action .......................................... CNTR
Contract Specific Performance ..................... PERF
Counterclaim – Monetary Damages/No Monetary
  Damages ...................................................... CC
Cross Claim ................................................ CROS
Declaratory Judgment ................................. DECL
Declare Death .............................................. DDTH
Detinue .......................................................... DET
Divorce
    Complaint – Contested/Uncontested ..... DIV
    Counterclaim/Responsive Pleading ...... DCRP
    Reinstatement – Custody/Visitation/Support/
      Equitable Distribution ..................... CVS
Driving Privileges
    Reinstatement pursuant to § 46.2-427 ..... DRIV
    Restoration – 3rd Offense ..................... REST

Ejectment .................................................... EJET
Encumber/Sell Real Estate ............................... RE
Enforce Vendor's Lien .................................. VEND
Escheatment ................................................... ESC
Establish Boundaries .................................... ESTB
Expungement .............................................. XPUN
Forfeiture of Property or Money ................... FORF
Freedom of Information ..................................... FOI
Garnishment .............................................. GARN
Injunction ....................................................... INJ
Intentional Tort .............................................. ITOR
Interdiction .................................................. INTD
Interpleader ................................................. INTP
Interrogatory ................................................ INTR
Judgment Lien – Bill to Enforce ................... LIEN
Landlord/Tenant ............................................... LT
Law Enforcement/Public Official Petition ....... LEP
Mechanics Lien .......................................... MECH
Medical Malpractice ..................................... MED
Motor Vehicle Tort .......................................... MV
Name Change ................................................... NC
Other General Tort Liability ......................... GTOR
Partition ....................................................... PART
Permit, Unconstitutional Grant/Denial by Locality LUC
Petition – (Miscellaneous) ............................. PET
Product Liability ......................................... PROD
Quiet Title ....................................................... QT
Referendum Elections .................................. ELEC
Reinstatement (Other than divorce or driving
  privileges) ................................................. REIN
Removal of Case to Federal Court ................. REM
Restore Firearms Rights – Felony ................. RFRF
Restore Firearms Rights – Review ................ RFRR
Separate Maintenance ...................................... SEP
Separate Maintenance – Counterclaim/Responsive
  Pleading ................................................... SCRP
Sever Order ................................................. SEVR
Sex Change ..................................................... COS
Taxes
    Correct Erroneous State/Local .......... CTAX
    Delinquent ....................................... DTAX
Termination of Mineral Rights ....................... MIN
Trust – Impress/Declare/Create ..................... TRST
Trust – Reformation ...................................... REFT
Uniform Foreign Country Money Judgments ...... RFCJ
Unlawful Detainer ............................................ UD
Vehicle Confiscation ...................................... VEH
Violation – Election Law ................................. VEL
Voting Rights – Restoration ......................... VOTE
Will Construction ........................................ CNST
Will Contested ............................................. WILL
Writs
    Certiorari ............................................. WC
    Habeas Corpus .................................. WHC
    Mandamus ............................................ WM
    Prohibition ........................................... WP
    Quo Warranto .................................. WQW
Wrongful Death .............................................. WD

# COMMONWEALTH OF VIRGINIA



## WASHINGTON CIRCUIT COURT
Civil Division
189 EAST MAIN STREET
ABINGDON  VA  24210
(276) 676-6224

Proof of Service

Virginia:
In the WASHINGTON CIRCUIT COURT

Case number: 191CL24001888-00
Service number: 001
Service filed: October 22, 2024
Judge:

Served by: WASHINGTON COUNTY
Style of case: JANE DOE  vs EMORY & HENRY UNIVERSITY
Service on: EMORY & HENRY UNIVERSITY
C/O MARK GRAHAM (RA)
30461 GARNAND DR
EMORY VA 24327

Attorney: NORTH, BENJAMIN F
717 KING ST SUITE 300
ALEXANDRIA VA 22314

Instructions:    COMPLAINT

Returns shall be made hereon, showing service of Summons issued Wednesday, October 23, 2024 with a copy of the
Complaint filed Tuesday, October 22, 2024 attached.

Hearing date  :
Service issued: Wednesday, October 23, 2024

For Sheriff Use Only

# COMMONWEALTH OF VIRGINIA



WASHINGTON CIRCUIT COURT
Civil Division
189 EAST MAIN STREET
ABINGDON VA 24210
(276) 676-6224

Summons

To: EMORY & HENRY UNIVERSITY
C/O MARK GRAHAM (RA)
30461 GARNAND DR
EMORY VA 24327

Case No. 191CL24001888-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Wednesday, October 23, 2024

Clerk of Court: PATRICIA S. MOORE

by _____
(CLERK/DEPUTY CLERK )

Instructions:    COMPLAINT

Hearing Official:

Attorney's name:    NORTH, BENJAMIN F
717 KING ST SUITE 300
ALEXANDRIA VA 22314

20

VIRGINIA:

FILED

OCT 22 2024

DEPUTY CLERK CIRCUIT COURT
WASHINGTON COUNTY, VA

IN THE CIRCUIT COURT FOR WASHINGTON COUNTY

| | |
|---|---|
| **JANE DOE,** | |
| **Plaintiff,** | |
| **v.** | **Case No.** 24-1888 |
| | **JURY TRIAL DEMANDED** |
| **EMORY & HENRY UNIVERSITY,** | |
| c/o Mark R. Graham (registered agent) | |
| 30461 Garnand Drive, | |
| Emory, Virginia 24327-2500, | |
| **Defendant.** | |

## COMPLAINT

Emory & Henry University did not want sixty year old equestrian coach – it wanted one thirty years younger. The University desperately wanted a pretext that it could use to replace Plaintiff with a younger employee, and finally got what it wanted when a false Title IX complaint was filed against Ms. Doe. When the University was already communicating about her replacement, the University received this complaint and jumped into action, terminating Ms. Doe within days of receiving the complaint. In doing so, the University completely ignored federal regulations enforcing Title IX and instead summarily terminated her. Accordingly, Ms. Doe brings this civil action against Defendant for violations of the Age Discrimination in Employment Act ("ADEA"), the Virginia Human Rights Act ("VHRA"), negligence, and negligence *per se*. For her Complaint against Defendant, Jane Doe states as follows:

21

## Parties

1.    Jane Doe ("Ms. Doe") was an assistant clinical professor or equine studies at the University. She is sixty-one years old.

2.    Emory & Henry University (the "University") is a private higher education institution located in Washington County, Virginia.

## Jurisdiction and Venue

3.    Subject matter jurisdiction is proper in the Commonwealth of Virginia and the Circuit Court of Washington County because the amount in controversy exceeds $25,000.

4.    This Court possesses personal jurisdiction over the University by virtue of its domicile and its transacting business in the Commonwealth. Va. Code § 8.01-328.1(A).

5.    Venue is proper in this Court because all causes of action arose in Washington County, Virginia. Va. Code § 8.01-262.

## The University's Background

6.    Institutions of higher education are required by law, as interpreted by the United States Supreme Court, to adjudicate claims of sexual harassment under the auspices of Title IX.

7.    Title IX is a federal statute prohibiting discrimination on the basis of sex for all persons in educational institutions that receive federal funding. *See* 20 U.S.C. § 1681.

8.      The University receives federal funding. Withdrawal of federal funding by the U.S. Department of Education would be financially ruinous for the University.

9.      The University maintains a Title IX Office.

10.     The University's Title IX personnel, including Title IX Coordinator Yancey Wilmoth, received training on the controlling Title IX regulations.

11.     The University's Human Resources Office, including Director of Human Resources Tracy Peery, also received training on the controlling Title IX regulations.

**Federal Title IX Regulations and University Policy**

12.     In May of 2020, the U.S. Department of Education promulgated regulations interpreting Title IX, codified at 34 C.F.R. 106, titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance."

13.     The U.S. Department of Education interpreted the effective date to mean that the regulations applied to all reports of sexual harassment (construed broadly to include allegations of sexual assault and other offenses) concerning conduct occurring on or after August 14, 2020.

14.     The federal regulations applied to this matter because, among other things, John Roe alleged conduct occurring exclusively in the year 2023.

15.     The federal regulations set forth procedural requirements for the University's adjudication of Title IX matters. Accordingly, the University is required by the regulations to adopt these procedural provisions in its own policies and procedures, for use in student-on-student sexual misconduct complaints.

3

16.     The University adopted the regulations' procedural requirements, as reflected in the University's "Title IX and Sexual Harassment Policy" ("Policy"), which states that the Policy is intended to "meet the University's obligations" under Title IX.

17.     Therefore, the University is not at liberty to substantially alter its Policy without federal regulatory change. Rather, in exchange for federal funding and the payment of tuition by students (without which the University would not exist or be in a position to receive federal funding), the University has agreed to be bound by its regulation-compliant Policy.

18.     Under the 2020 regulations, the University is obligated to respond to a "formal complaint" of sexual harassment in a way compliant with the grievance process outlined in 34 C.F.R. §106.45.

19.     The term "formal complaint" is defined by 34 C.F.R. §106.30 as, in relevant part, "a document filed by a complainant or signed by the Title IX Coordinator alleging sexual harassment against a respondent and requesting that the recipient investigate the allegation of sexual harassment."

20.     The Department requires that a "formal complaint" be filed, and the grievance process at 34 C.F.R. §106.45 be completed, before "the imposition of any disciplinary sanctions or other actions that are not supportive measures." 34 C.F.R. §106.44(a).

21.     The 34 C.F.R. 106.45 grievance process, in the context of postsecondary educational institutions receiving federal funding, requires that a University provide

4

24

formal notice of the allegations against the respondent before any investigation, generate an investigative report, hold a live hearing with cross examination, and contain an appeal process before any discipline is imposed, among other things. *See generally* 34 C.F.R. §106.45(b).

22.    "Each of the procedural requirements in § 106.45 is prescribed because the Department views the requirement as important to ensuring a fair process for both parties rooted in the fundamental due process principles of notice and meaningful opportunities to be heard." 85 Fed. Reg. 30053.

23.    The term "formal complaint" has a static and defined meaning. If, for example, a recipient of federal funds could avoid the requirements of 34 C.F.R. §106.45 simply by labeling a complaint "informal," the entire regulatory scheme would unravel. Any college or university could use this method to simply avoid ever using the 34 C.F.R. §106.45 grievance process.

## Background of Ms. Doe and John Roe

24.    Following a professional equestrian career, Ms. Doe began employment at the University in the Spring of 2023 as an assistant clinical professor in the equestrian program.

25.    Ms. Doe replaced an employee who repeatedly drank to excess on the job but was never disciplined.

26.    Ms. Doe never received any negative performance reviews during the entirety of her employment at the University.

27.    Ms. Doe thoroughly enjoyed teaching and built positive relationships with all of her students, absent any complaints from any of her students.

28.    John Roe was one of many students, male and female, who had a friendly professional relationship with Ms. Doe.

29.    John Roe was somewhat of a class clown whose company was enjoyed by other students and Ms. Doe. He frequently made jokes with his fellow students and Ms. Doe.

### The Anonymous Title IX Complaint

30.    According to the University, on or around October 27, 2023, an employee at the University submitted an Title IX complaint against Ms. Doe.

31.    On October 31, 2023, the University sent Ms. Doe an email seeking an interview related to the "informal complaint of sexual harassment." The University did not tell Ms. Doe the substance of the complaint or who made the complaint. Eventually, however, she would discover that the complaint alleged that John Roe had been made "uncomfortable" by texts and "photos" from Ms. Doe.

32.    John Roe never filed any complaint himself.

33.    Nor did Ms. Doe ever send any sexual or inappropriate texts or photos (or anything else sexual whatsoever) to John Roe or any other student. While she texted many of her students and sent equestrian related photos, there was never anything remotely sexual about any of Ms. Doe's behavior with her students.

### The University Conducts its "Informal" Investigation For A Week

34.    Ms. Doe sat for an interview on November 1, 2023. At that interview, both Yancey Wilmoth and Tracy Peery were present.

35.    Both Wilmoth and Peery, having been trained in Title IX, knew that the "notice" sent to Ms. Doe seeking the interview was not complaint with federal regulations interpreting Title IX.

36.    In fact, Wilmoth and Peery referred to the complaint against Ms. Doe as an "informal complaint." But the term "informal complaint" does not appear in University Policy.

37.    The term "informal complaint" is created out of whole cloth for the sole purpose of disclaiming the regulations' requirement that a recipient follow 34 C.F.R. §106.45 in response to a "formal complaint." Wilmoth and Peery, having been trained in Title IX, knew that a "formal complaint" must be adjudicated according to 34 C.F.R. §106.45, and they referred to the complaint against Ms. Doe as an "informal complaint" for the sole purpose of avoiding the regulations.

38.    Indeed, according to federal regulation, a Notice of Allegations must, among other things, "include the identities of the parties involved in the incident, if known, [and] the conduct allegedly constituting sexual harassment under § 106.30, and the date and location of the alleged incident, if known." 34 C.F.R. §106.45(b)(2)(B).

39.    Further, "the written notice must inform the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney, under

7

paragraph (b)(5)(iv) of this section, and may inspect and review evidence under paragraph (b)(5)(vi) of this section." *Id.*

40.    A Notice of Allegations must also "inform the parties of any provision in the recipient's code of conduct that prohibits knowingly making false statements or knowingly submitting false information during the grievance process." *Id.*

41.    The federal government's purpose in drafting §106.45(b)(2) was that "[f]undamental fairness and due process principles require that a respondent knows the details of the allegations made against the respondent, to the extent the details are known, to provide adequate opportunity for the respondent to respond."[1]

42.    The "informal" "notice" contained none of the required elements cited above. Instead, it merely said that due to "the nature of the complaint" Ms. Doe's "presence will ... be required" at an interview.

43.    During the interview, Ms. Doe was subjected to treatment that one would find in a Franz Kafka novel. Wilmoth and Peery were extremely hostile towards Ms. Doe; they interrogated her about a complaint where Ms. Doe did not know the details of the complaint. At the same time, they demanded confessions from Ms. Doe and accused her (without evidence) of deleting evidence in bad faith.

44.    At the close of the interview, Ms. Doe offered to provide witnesses, among other things, to Wilmoth and Peery. Wilmoth and Peery told Ms. Doe "that's

---

[1] Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30133 (May 19, 2020).

28

good" and "that's what you're supposed to be doing." At a minimum, Wilmoth and Peery never instructed Ms. Doe to not reach out to witnesses.

45.    Nor could they, because federal regulations protect Ms. Doe's right to gather and present evidence and witnesses. 34 C.F.R. §106.45(b)(5)(iii) (schools may not restrict the ability of parties to gather evidence).

46.    But when Ms. Doe submitted witnesses to Wilmoth and Peery or was otherwise gathering witnesses and evidence in the days following the interview, Peery reprimanded her. Peery emailed Ms. Doe that she needed to "stop reaching out to students asking them to be witnesses for you." She continued (as if gathering witnesses to support her innocence was a violation in itself): "I have evidence that you have been doing so and have violated the confidentiality of the investigation. Your actions are unprofessional and need to stop."

47.    When Peery sent this email, she knew that Ms. Doe had the right to gather witnesses and that the University could not even prohibit her from discussing the investigation. 34 C.F.R. §106.45(b)(5)(iii). But she chose to intimidate Ms. Doe anyway.

48.    University Policy and federal law afford Ms. Doe the right to be presumed "not responsible" throughout the investigation and adjudication.

49.    Obviously, the University did not presume Ms. Doe not responsible. It presumed her responsible and interrogated her with that presumption in mind.

50.    The University took less than one week to adjudicate the "informal" complaint against Ms. Doe. It found her responsible for the allegation against her.

9

51.     In a meeting on November 8, 2023, Ms. Doe was notified that she was terminated from employment because of the findings of the investigation. She was immediately escorted by security to clean out her desk, and was marched off of campus.

52.     During the November 8 meeting, Peery insisted (in a transparent attempt to skirt liability) that Ms. Doe was terminated "at will" despite the findings against her.

### Ms. Doe Discovers Additional Context and Exhausts Remedies

53.     After Ms. Doe was terminated, she discovered from at least three witnesses with knowledge that the University intended to replace her with a younger employee before the Title IX allegations were ever made.

54.     Although the University posted the job posting on November 14, 2023, it had communications with Ms. Doe's replacement before the job was posted publicly.

55.     Ms. Doe was indeed replaced by this employee, who is thirty years Ms. Doe's junior.

56.     Ms. Doe filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights on March 7, 2024.

57.     She received a Notice of Right to Sue from the EEOC on July 25, 2024. This Notice also suffices as a Notice of Right to Sue under the VHRA. Va. Code §2.2-3907(I).

### The University Continues to Punish Ms. Doe

58.    As a result of the University's wrongful finding and termination, Ms. Doe suffers severe emotional, psychological, and financial harm.

59.    While suffering this harm, and having to deal with the unexpected loss of income, Ms. Doe sought unemployment from the North Carolina Department of Commerce.

60.    As the University had repeatedly told her on November 8, Ms. Doe represented to the North Carolina agency that she had been terminated "at will" and not "for cause." The former would entitle her to unemployment income whereas the latter would not.

61.    In a remarkable showing of contempt towards Ms. Doe, the University opposed Ms. Doe's request for unemployment. At a hearing, counsel for the University testified and argued for the first time that Ms. Doe was not terminated "at will" and instead because she sexually harassed a student.

62.    Appearing pro se, Ms. Doe testified at the hearing, and successfully obtained unemployment income. The North Carolina agency further made findings of fact that, among other things, "[Ms. Doe] did not sexually harass anyone during her tenure at with Emory & Henry College."

## CAUSES OF ACTION

### COUNT I
**Age Discrimination in Violation of the ADEA**

63.    Ms. Doe incorporates all prior allegations as if fully stated herein.

64.    Ms. Doe was an employee over 40 years of age at the University, entitling her to rights under the federal Age Discrimination in Employment Act ("ADEA").

65.    The University is required to abide by ADEA's prohibition on age discrimination.

66.    The University discriminated against Ms. Doe on the basis of age by terminating her in violation of federal law and its policies and then replacing her with a younger employee.

67.    Ms. Doe is protected by ADEA from discrimination on the basis of her age.

68.    Ms. Doe was qualified for her position at the University.

69.    Ms. Doe suffered adverse employment actions, including but not limited to her firing.

70.    She was replaced by a younger employee.

71.    There is no legitimate nondiscriminatory reason for the University's behavior.

72.    Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

73.    Ms. Doe has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against her.

74.    She requests liquidated damages under the ADEA.

## COUNT II

12

## Age Discrimination in Violation of the VHRA

75.    Ms. Doe incorporates all prior allegations as if fully stated herein.

76.    Ms. Doe was an employee over 40 years of age at the University, entitling her to rights under the Virginia Human Rights Act.

77.    The University is required to abide by ADEA's prohibition on age discrimination.

78.    The University discriminated against Ms. Doe on the basis of age by terminating her in violation of federal law and its policies and then replacing her with a younger employee.

79.    Ms. Doe is protected by VHRA from discrimination on the basis of her age.

80.    Ms. Doe was qualified for her position at the University.

81.    Ms. Doe suffered adverse employment actions, including but not limited to her firing.

82.    She was replaced by a younger employee.

83.    There is no legitimate nondiscriminatory reason for the University's behavior.

84.    Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

85.    Ms. Doe has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against her.

86.    She seeks compensatory and punitive damages, and any other available relief, under the VHRA.

## COUNT III
### Negligence *Per Se*

87.    Ms. Doe incorporates all prior allegations as if fully stated herein.

88.    The United States Department of Education promulgated regulations interpreting Title IX, codified at 34 C.F.R. 106, titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance."

89.    34 C.F.R. 106 is a binding regulation on the University.

90.    34 C.F.R. 106 was enacted for public safety. Specifically, the regulations were designed to both protect victims of sexual harassment and to protect students and faculty accused of sexual harassment.

91.    Ms. Doe, as a faculty member, belonged to the class of persons the regulations were designed to protect.

92.    The University's violations of 34 C.F.R. 106 were a proximate cause of the injury to Ms. Doe, because the violations produced the harm to Ms. Doe and no efficient intervening cause exists that would have caused the harm to Ms. Doe.

93.    As a result of the University's breach of 34 C.F.R. 106, Ms. Doe suffers and continues to suffer substantial financial harm. Accordingly, Ms. Doe requests compensatory, incidental, and emotional damages.

## COUNT IV
### Negligence

94.    Ms. Doe incorporates all prior allegations as if fully stated herein.

95.     In choosing to accept federal funding and adjudicate matters of sexual misconduct, the University assumed a duty to conduct its sexual misconduct proceedings with reasonable care under the circumstances, to avoid foreseeable harm to students or faculty subject to its procedures.

96.     It was foreseeable that Ms. Doe would be harmed by the University's complete and total disregard of its own Title IX procedures.

97.     The University breached its duty to Ms. Doe when it subjected her to the Title IX process and failed to abide by its own procedures, and otherwise conducted itself in a biased or partial manner.

98.     The University's action was a proximate cause of Ms. Doe's injury, because Ms. Doe's injury would not have occurred absent the University's action, and because no efficient intervening cause exists that would have caused the harm to Ms. Doe.

99.     As a result of the University's breach of its duty, Ms. Doe suffers and continues to suffer substantial financial harm. Accordingly, Ms. Doe requests compensatory, incidental, and emotional damages.

## JURY DEMAND

100.    Doe demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE Doe respectfully requests that this Court grant him the following relief against all Defendants:

1. Liquidated damages under the ADEA;

2. Other damages in an amount to be proved at trial;

3. Costs of suit;

4. Attorneys' fees, pursuant to 42 U.S.C § 1988(b); and

5. Such other and further relief as the Court deems necessary and proper.


Dated: October 22, 2024                     Jane Doe
                                            By Counsel

                                            BINNALL LAW GROUP, PLLC


                                            _____
                                            Benjamin North, VSB No. 97439
                                            Lindsay R. McKasson, VSB No. 96074
                                            717 King Street, Suite 200
                                            Alexandria, Virginia 22314
                                            Phone: (703) 888-1943
                                            Fax: (703) 888-1930
                                            Email: ben@binnall.com
                                                   lindsay@binnall.com

                                            *Counsel for Plaintiff Jane Doe*

# COMMONWEALTH OF VIRGINIA



WASHINGTON CIRCUIT COURT

Civil Division

189 EAST MAIN STREET

ABINGDON  VA  24210

(276) 676-6224

FILED

OCT 30 2024

DEPUTY CLERK CIRCUIT COURT
WASHINGTON COUNTY, VA

Proof of Service

Virginia:

In the WASHINGTON CIRCUIT COURT

Case number: 191CL24001888-00

Service number: 001

Service filed: October 22, 2024

Judge:

Served by: WASHINGTON COUNTY

Style of case: JANE DOE  vs EMORY & HENRY UNIVERSITY

Service on: EMORY & HENRY UNIVERSITY
           C/O MARK GRAHAM (RA)
           30461 GARNAND DR
           EMORY VA 24327

Attorney: NORTH, BENJAMIN F
          717 KING ST SUITE 300
          ALEXANDRIA VA 22314

Instructions:          COMPLAINT

Returns shall be made hereon, showing service of Summons issued Wednesday, October 23, 2024 with a copy of the
Complaint filed Tuesday, October 22, 2024 attached.

Hearing date  :

Service issued:  Wednesday, October 23, 2024

For Sheriff Use Only

EXECUTED IN THE COUNTY OF WASHINGTON, VA
BY DELIVERING A COPY OF THE ABOVE MENTION-
ED PAPERS TO: *Mark Graham*

IN PERSON
*10/24/24  DIS A.J. Blund*

DATE       SERVING OFFICER
FOR: BLAKE ANDIS, SHERIFF

37

Received & Filed on 11/15/2024 7:06 PM By User: jaw, Circuit Court Clerk's Office Washington County, VA, Thea Moore, Clerk

**V I R G I N I A :**

## IN THE CIRCUIT COURT FOR WASHINGTON COUNTY

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CL24001888-00 |
| | ) | |
| EMORY AND HENRY UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on November 15, 2024, Defendant, Emory and Henry University, by counsel, filed a Notice of Removal of the above-styled action with the United States District Court for the Western District of Virginia, Abingdon Division (the "**District Court**"). A true and accurate copy of the Notice of Removal filed with the District Court is attached hereto as **Exhibit A**.

DATED: November 15, 2024                    EMORY AND HENRY COLLEGE

_____
                                            Counsel

Mary Elizabeth Davis (VSB No. 41908)
Caitlin E. Tobin (VSB No. 98432)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Two James Center
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone:     (804) 799-7864
Facsimile:     (804) 977-3294
E-mail:     bdavis@whitefordlaw.com
E-mail:     ctobin@whitefordlaw.com

*Counsel for Defendant Emory and Henry University*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2024, a true and accurate copy of the foregoing

*Notice of Filing of Notice of Removal* was sent by electronic mail and first-class mail, postage

prepaid, to:

Benjamin North (VSB No. 97439)
Lindsay R. McKasson (VSB No. 96074)
Binnall Law Group
717 King Street, Suite 200
Alexandria, Virginia  22314
Telephone:    (703) 888-1943
Facsimile:    (703) 888-1930
Email:        ben@binnall.com
              lindsay@binnall.com

*Counsel for Plaintiff Jane Doe*


_____
Mary Elizabeth Davis

2

**EXHIBIT A**

CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

November 15, 2024

LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Abingdon Division

JANE DOE,                                    )
                                             )
     Plaintiff,                       )
                                             )
v.                                           )          Civil Action No. ___1:24cv57___
                                             )
EMORY & HENRY UNIVERSITY,                    )
                                             )
     Defendant.                       )

### NOTICE OF REMOVAL

Defendant, Emory & Henry University (the "**University**" or "**Defendant**"), by counsel, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, petitions this Court for removal of an action instituted by Jane Doe ("**Doe**" or "**Plaintiff**"), in the Circuit Court for Washington County, styled *Jane Doe v. Emory and Henry University* (Case No. CL24001888-00) (the "**State Court Action**"). In support of this Notice, Defendant respectfully states as follows:

### BACKGROUND

1.     On October 22, 2024, Plaintiff commenced this action by filing a Complaint in the Circuit Court for Washington County.

2.     In compliance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Defendant are attached hereto as **Exhibit A**.

### TIMELINESS OF REMOVAL AND VENUE

3.     The University was served with process in the State Court Action on October 29, 2024.

4.      The removal of the State Court Action is timely because, pursuant to 28 U.S.C. §
1446(b), this Notice of Removal has been filed within thirty (30) days after the University was
served with process.

5.      This Court is the proper venue for removal under 28 U.S.C. § 1441(a) because it is
the federal district court that embraces the Circuit Court for Washington County, where the State
Court Action was filed and is pending.

## GROUNDS FOR REMOVAL

6.      The four-count Complaint alleges that the University violated the Age
Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (the "**ADEA**"); that the University
violated the Virginia Human Rights Act (the "**VHRA**"); and claims of negligence and negligence
per se related to the University's process and procedures under Title IX of the Education Act of
1972, 20 U.S.C. §§ 1681 *et seq.* ("**Title IX**").

7.      This Court has original jurisdiction over Plaintiff's federal question claim and
supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1331 (declaring that
the district courts have original jurisdiction of all civil actions arising under the laws of the United
States); 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original
jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are
so related to claims in the action within such original jurisdiction that they form part of the same
case or controversy.").

8.      This Court has original jurisdiction over Plaintiff's federal question claim under the
ADEA, as this claim arises under the laws of the United States.  *See* 28 U.S.C. § 1331.

9.      This Court has supplemental jurisdiction over Plaintiff's state law claims for
violation of the VHRA, negligence per se, and negligence, as they are based on the same set of

facts as the federal claim and, thus, form part of the same case or controversy as Plaintiff's ADEA claim.  *See* 28 U.S.C. § 1367(a).

10.    Accordingly, removal to this Court is proper pursuant to 28 U.S.C. §§ 1331, 1367(a), and 1441(a).

## NOTICE TO PLAINTIFF AND STATE COURT

11.    Pursuant to 28 U.S.C. § 1446(d), the University, by and through the undersigned counsel, is contemporaneously filing a copy of this Notice of Removal with the Clerk of the Circuit Court of Washington County (the "Notice of Filing of Notice of Removal").  A true and correct copy of the Notice of Filing of Notice of Removal is attached hereto as **Exhibit B**.

12.    This Notice of Removal is also being served on Plaintiff's counsel pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendant, Emory & Henry University, hereby removes the State Court Action to the United States District Court for the Western District of Virginia, Abingdon Division, and respectfully requests that this Court assume jurisdiction over this civil action.

DATED:  November 15, 2024                 EMORY & HENRY UNIVERSITY


By:    */s/ Mary Elizabeth Davis*
Mary Elizabeth Davis (VSB No. 41908)
Caitlin E. Tobin (VSB No. 98432)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Two James Center
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone:    (804) 799-7864
Facsimile:    (804) 977-3294
E-mail:        bdavis@whitefordlaw.com
E-mail:        ctobin@whitefordlaw.com

*Counsel for Defendant Emory & Henry University*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I electronically filed the foregoing with the

Clerk of Court via the CM/ECF System which will send notification of such filing to those

registered to receive electronic notices via email transmission at the email addresses provided by

them, and also sent a copy to counsel for Plaintiff, Jane Doe, at the address stated below, via

electronic mail and U.S. mail, postage prepaid, on November 15, 2024, to:

> Benjamin North (VSB No. 97439)
> Lindsay R. McKasson (VSB No. 96074)
> Binnall Law Group
> 717 King Street, Suite 200
> Alexandria, Virginia  22314
> Telephone:     (703) 888-1943
> Facsimile:      (703) 888-1930
> Email:          ben@binnall.com
>                 lindsay@binnall.com

*Counsel for Plaintiff Jane Doe*


> _/s/ Mary Elizabeth Davis_____
> Mary Elizabeth Davis

**EXHIBIT A**
**EXHIBIT A**

# COMMONWEALTH OF VIRGINIA



WASHINGTON CIRCUIT COURT
Civil Division
189 EAST MAIN STREET
ABINGDON VA 24210
(276) 676-6224

Summons

To: EMORY & HENRY UNIVERSITY
C/O MARK GRAHAM (RA)
30461 GARNAND DR
EMORY VA 24327

Case No. 191CL24001888-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Wednesday, October 23, 2024

Clerk of Court: PATRICIA S. MOORE

by _____
(CLERK/DEPUTY CLERK )

Instructions:    COMPLAINT

Hearing Official:

Attorney's name:    NORTH, BENJAMIN F
717 KING ST SUITE 300
ALEXANDRIA VA 22314

44

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 47 of 96
Pageid#: 87
Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 3 of 17
Pageid#: 6

**EXHIBIT A**

**VIRGINIA:**

FILED

OCT 22 2024

DEPUTY CLERK CIRCUIT COURT
WASHINGTON COUNTY, VA

### IN THE CIRCUIT COURT FOR **WASHINGTON COUNTY**

JANE DOE,

      Plaintiff,

v.

      Case No. 24-1888

      **JURY TRIAL DEMANDED**

**EMORY & HENRY UNIVERSITY,**
c/o Mark R. Graham (registered agent)
30461 Garnand Drive,
Emory, Virginia 24327-2500,

      Defendant.

## COMPLAINT

Emory & Henry University did not want sixty year old equestrian coach – it wanted one thirty years younger. The University desperately wanted a pretext that it could use to replace Plaintiff with a younger employee, and finally got what it wanted when a false Title IX complaint was filed against Ms. Doe. When the University was already communicating about her replacement, the University received this complaint and jumped into action, terminating Ms. Doe within days of receiving the complaint. In doing so, the University completely ignored federal regulations enforcing Title IX and instead summarily terminated her. Accordingly, Ms. Doe brings this civil action against Defendant for violations of the Age Discrimination in Employment Act ("ADEA"), the Virginia Human Rights Act ("VHRA"), negligence, and negligence *per se*. For her Complaint against Defendant, Jane Doe states as follows:

45

Case 1:24-cv-00057-JPJ-PMS     Document 6     Filed 12/05/24     Page 48 of 96
Pageid#: 88

**EXHIBIT A**

Case 1:24-cv-00057-JPJ-PMS     Document 1-1     Filed 11/15/24     Page 3 of 17
Pageid#: 7

**EXHIBIT A**

### Parties

1.      Jane Doe ("Ms. Doe") was an assistant clinical professor or equine studies at the University. She is sixty-one years old.

2.      Emory & Henry University (the "University") is a private higher education institution located in Washington County, Virginia.

### Jurisdiction and Venue

3.      Subject matter jurisdiction is proper in the Commonwealth of Virginia and the Circuit Court of Washington County because the amount in controversy exceeds $25,000.

4.      This Court possesses personal jurisdiction over the University by virtue of its domicile and its transacting business in the Commonwealth. Va. Code § 8.01-328.1(A).

5.      Venue is proper in this Court because all causes of action arose in Washington County, Virginia. Va. Code § 8.01-262.

### The University's Background

6.      Institutions of higher education are required by law, as interpreted by the United States Supreme Court, to adjudicate claims of sexual harassment under the auspices of Title IX.

7.      Title IX is a federal statute prohibiting discrimination on the basis of sex for all persons in educational institutions that receive federal funding. *See* 20 U.S.C. § 1681.

2

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 49 of 96
Pageid#: 89
Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 4 of 17
Pageid#: 8

**EXHIBIT A**

8.    The University receives federal funding. Withdrawal of federal funding by the U.S. Department of Education would be financially ruinous for the University.

9.    The University maintains a Title IX Office.

10.    The University's Title IX personnel, including Title IX Coordinator Yancey Wilmoth, received training on the controlling Title IX regulations.

11.    The University's Human Resources Office, including Director of Human Resources Tracy Peery, also received training on the controlling Title IX regulations.

### Federal Title IX Regulations and University Policy

12.    In May of 2020, the U.S. Department of Education promulgated regulations interpreting Title IX, codified at 34 C.F.R. 106, titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance."

13.    The U.S. Department of Education interpreted the effective date to mean that the regulations applied to all reports of sexual harassment (construed broadly to include allegations of sexual assault and other offenses) concerning conduct occurring on or after August 14, 2020.

14.    The federal regulations applied to this matter because, among other things, John Roe alleged conduct occurring exclusively in the year 2023.

15.    The federal regulations set forth procedural requirements for the University's adjudication of Title IX matters. Accordingly, the University is required by the regulations to adopt these procedural provisions in its own policies and procedures, for use in student-on-student sexual misconduct complaints.

3

47

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 50 of 96
Pageid#: 90
Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 5 of 17
Pageid#: 9

**EXHIBIT A**

16.     The University adopted the regulations' procedural requirements, as reflected in the University's "Title IX and Sexual Harassment Policy" ("Policy"), which states that the Policy is intended to "meet the University's obligations" under Title IX.

17.     Therefore, the University is not at liberty to substantially alter its Policy without federal regulatory change. Rather, in exchange for federal funding and the payment of tuition by students (without which the University would not exist or be in a position to receive federal funding), the University has agreed to be bound by its regulation-compliant Policy.

18.     Under the 2020 regulations, the University is obligated to respond to a "formal complaint" of sexual harassment in a way compliant with the grievance process outlined in 34 C.F.R. §106.45.

19.     The term "formal complaint" is defined by 34 C.F.R. §106.30 as, in relevant part, "a document filed by a complainant or signed by the Title IX Coordinator alleging sexual harassment against a respondent and requesting that the recipient investigate the allegation of sexual harassment."

20.     The Department requires that a "formal complaint" be filed, and the grievance process at 34 C.F.R. §106.45 be completed, before "the imposition of any disciplinary sanctions or other actions that are not supportive measures." 34 C.F.R. §106.44(a).

21.     The 34 C.F.R. 106.45 grievance process, in the context of postsecondary educational institutions receiving federal funding, requires that a University provide

4

Case 1:24-cv-00057-JPJ-PMS     Document 6     Filed 12/05/24     Page 51 of 96
Pageid#: 91
Case 1:24-cv-00057-JPJ-PMS     Document 1-1     Filed 11/15/24     Page 6 of 17
Pageid#: 10

**EXHIBIT A**
**EXHIBIT A**

formal notice of the allegations against the respondent before any investigation, generate an investigative report, hold a live hearing with cross examination, and contain an appeal process before any discipline is imposed, among other things. *See generally* 34 C.F.R. §106.45(b).

22.     "Each of the procedural requirements in § 106.45 is prescribed because the Department views the requirement as important to ensuring a fair process for both parties rooted in the fundamental due process principles of notice and meaningful opportunities to be heard." 85 Fed. Reg. 30053.

23.     The term "formal complaint" has a static and defined meaning. If, for example, a recipient of federal funds could avoid the requirements of 34 C.F.R. §106.45 simply by labeling a complaint "informal," the entire regulatory scheme would unravel. Any college or university could use this method to simply avoid ever using the 34 C.F.R. §106.45 grievance process.

### Background of Ms. Doe and John Roe

24.     Following a professional equestrian career, Ms. Doe began employment at the University in the Spring of 2023 as an assistant clinical professor in the equestrian program.

25.     Ms. Doe replaced an employee who repeatedly drank to excess on the job but was never disciplined.

26.     Ms. Doe never received any negative performance reviews during the entirety of her employment at the University.

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 52 of 96
Pageid#: 92

Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 7 of 17
Pageid#: 11

EXHIBIT A
EXHIBIT A

27.    Ms. Doe thoroughly enjoyed teaching and built positive relationships with all of her students, absent any complaints from any of her students.

28.    John Roe was one of many students, male and female, who had a friendly professional relationship with Ms. Doe.

29.    John Roe was somewhat of a class clown whose company was enjoyed by other students and Ms. Doe. He frequently made jokes with his fellow students and Ms. Doe.

### The Anonymous Title IX Complaint

30.    According to the University, on or around October 27, 2023, an employee at the University submitted an Title IX complaint against Ms. Doe.

31.    On October 31, 2023, the University sent Ms. Doe an email seeking an interview related to the "informal complaint of sexual harassment." The University did not tell Ms. Doe the substance of the complaint or who made the complaint. Eventually, however, she would discover that the complaint alleged that John Roe had been made "uncomfortable" by texts and "photos" from Ms. Doe.

32.    John Roe never filed any complaint himself.

33.    Nor did Ms. Doe ever send any sexual or inappropriate texts or photos (or anything else sexual whatsoever) to John Roe or any other student. While she texted many of her students and sent equestrian related photos, there was never anything remotely sexual about any of Ms. Doe's behavior with her students.

### The University Conducts its "Informal" Investigation For A Week

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 53 of 96
Pageid#: 93

Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 8 of 17
Pageid#: 12

EXHIBIT A
EXHIBIT A

34.    Ms. Doe sat for an interview on November 1, 2023. At that interview, both Yancey Wilmoth and Tracy Peery were present.

35.    Both Wilmoth and Peery, having been trained in Title IX, knew that the "notice" sent to Ms. Doe seeking the interview was not complaint with federal regulations interpreting Title IX.

36.    In fact, Wilmoth and Peery referred to the complaint against Ms. Doe as an "informal complaint." But the term "informal complaint" does not appear in University Policy.

37.    The term "informal complaint" is created out of whole cloth for the sole purpose of disclaiming the regulations' requirement that a recipient follow 34 C.F.R. §106.45 in response to a "formal complaint." Wilmoth and Peery, having been trained in Title IX, knew that a "formal complaint" must be adjudicated according to 34 C.F.R. §106.45, and they referred to the complaint against Ms. Doe as an "informal complaint" for the sole purpose of avoiding the regulations.

38.    Indeed, according to federal regulation, a Notice of Allegations must, among other things, "include the identities of the parties involved in the incident, if known, [and] the conduct allegedly constituting sexual harassment under § 106.30, and the date and location of the alleged incident, if known." 34 C.F.R. §106.45(b)(2)(B).

39.    Further, "the written notice must inform the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney, under

7

51

**EXHIBIT A**

**EXHIBIT A**

paragraph (b)(5)(iv) of this section, and may inspect and review evidence under paragraph (b)(5)(vi) of this section." *Id.*

40.     A Notice of Allegations must also "inform the parties of any provision in the recipient's code of conduct that prohibits knowingly making false statements or knowingly submitting false information during the grievance process." *Id.*

41.     The federal government's purpose in drafting §106.45(b)(2) was that "[f]undamental fairness and due process principles require that a respondent knows the details of the allegations made against the respondent, to the extent the details are known, to provide adequate opportunity for the respondent to respond."[1]

42.     The "informal" "notice" contained none of the required elements cited above. Instead, it merely said that due to "the nature of the complaint" Ms. Doe's "presence will … be required" at an interview.

43.     During the interview, Ms. Doe was subjected to treatment that one would find in a Franz Kafka novel. Wilmoth and Peery were extremely hostile towards Ms. Doe; they interrogated her about a complaint where Ms. Doe did not know the details of the complaint. At the same time, they demanded confessions from Ms. Doe and accused her (without evidence) of deleting evidence in bad faith.

44.     At the close of the interview, Ms. Doe offered to provide witnesses, among other things, to Wilmoth and Peery. Wilmoth and Peery told Ms. Doe "that's

_____

[1] Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30133 (May 19, 2020).

8

Case 1:24-cv-00057-JPJ-PMS     Document 6     Filed 12/05/24     Page 55 of 96
Pageid#: 95
Case 1:24-cv-00057-JPJ-PMS     Document 1-1     Filed 11/15/24     Page 10 of 17
Pageid#: 14

EXHIBIT A

EXHIBIT A

good" and "that's what you're supposed to be doing." At a minimum, Wilmoth and Peery never instructed Ms. Doe to not reach out to witnesses.

45.     Nor could they, because federal regulations protect Ms. Doe's right to gather and present evidence and witnesses. 34 C.F.R. §106.45(b)(5)(iii) (schools may not restrict the ability of parties to gather evidence).

46.     But when Ms. Doe submitted witnesses to Wilmoth and Peery or was otherwise gathering witnesses and evidence in the days following the interview, Peery reprimanded her. Peery emailed Ms. Doe that she needed to "stop reaching out to students asking them to be witnesses for you." She continued (as if gathering witnesses to support her innocence was a violation in itself): "I have evidence that you have been doing so and have violated the confidentiality of the investigation. Your actions are unprofessional and need to stop."

47.     When Peery sent this email, she knew that Ms. Doe had the right to gather witnesses and that the University could not even prohibit her from discussing the investigation. 34 C.F.R. §106.45(b)(5)(iii). But she chose to intimidate Ms. Doe anyway.

48.     University Policy and federal law afford Ms. Doe the right to be presumed "not responsible" throughout the investigation and adjudication.

49.     Obviously, the University did not presume Ms. Doe not responsible. It presumed her responsible and interrogated her with that presumption in mind.

50.     The University took less than one week to adjudicate the "informal" complaint against Ms. Doe. It found her responsible for the allegation against her.

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 56 of 96
Pageid#: 96

**EXHIBIT A**

Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 11 of 17
Pageid#: 15

**EXHIBIT A**

51.     In a meeting on November 8, 2023, Ms. Doe was notified that she was terminated from employment because of the findings of the investigation. She was immediately escorted by security to clean out her desk, and was marched off of campus.

52.     During the November 8 meeting, Peery insisted (in a transparent attempt to skirt liability) that Ms. Doe was terminated "at will" despite the findings against her.

### Ms. Doe Discovers Additional Context and Exhausts Remedies

53.     After Ms. Doe was terminated, she discovered from at least three witnesses with knowledge that the University intended to replace her with a younger employee before the Title IX allegations were ever made.

54.     Although the University posted the job posting on November 14, 2023, it had communications with Ms. Doe's replacement before the job was posted publicly.

55.     Ms. Doe was indeed replaced by this employee, who is thirty years Ms. Doe's junior.

56.     Ms. Doe filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights on March 7, 2024.

57.     She received a Notice of Right to Sue from the EEOC on July 25, 2024. This Notice also suffices as a Notice of Right to Sue under the VHRA. Va. Code §2.2-3907(I).

### The University Continues to Punish Ms. Doe

Case 1:24-cv-00057-JPJ-PMS     Document 6     Filed 12/05/24     Page 57 of 96
Pageid#: 97
Case 1:24-cv-00057-JPJ-PMS     Document 1-1     Filed 11/15/24     Page 12 of 17
Pageid#: 16

EXHIBIT A

58.     As a result of the University's wrongful finding and termination, Ms. Doe suffers severe emotional, psychological, and financial harm.

59.     While suffering this harm, and having to deal with the unexpected loss of income, Ms. Doe sought unemployment from the North Carolina Department of Commerce.

60.     As the University had repeatedly told her on November 8, Ms. Doe represented to the North Carolina agency that she had been terminated "at will" and not "for cause." The former would entitle her to unemployment income whereas the latter would not.

61.     In a remarkable showing of contempt towards Ms. Doe, the University opposed Ms. Doe's request for unemployment. At a hearing, counsel for the University testified and argued for the first time that Ms. Doe was not terminated "at will" and instead because she sexually harassed a student.

62.     Appearing pro se, Ms. Doe testified at the hearing, and successfully obtained unemployment income. The North Carolina agency further made findings of fact that, among other things, "[Ms. Doe] did not sexually harass anyone during her tenure at with Emory & Henry College."


## CAUSES OF ACTION

### COUNT I
### Age Discrimination in Violation of the ADEA


63.     Ms. Doe incorporates all prior allegations as if fully stated herein.

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 58 of 96
Pageid#: 98
Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 12 of 17
Pageid#: 17

**EXHIBIT A**
**EXHIBIT A**

64.     Ms. Doe was an employee over 40 years of age at the University, entitling her to rights under the federal Age Discrimination in Employment Act ("ADEA").

65.     The University is required to abide by ADEA's prohibition on age discrimination.

66.     The University discriminated against Ms. Doe on the basis of age by terminating her in violation of federal law and its policies and then replacing her with a younger employee.

67.     Ms. Doe is protected by ADEA from discrimination on the basis of her age.

68.     Ms. Doe was qualified for her position at the University.

69.     Ms. Doe suffered adverse employment actions, including but not limited to her firing.

70.     She was replaced by a younger employee.

71.     There is no legitimate nondiscriminatory reason for the University's behavior.

72.     Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

73.     Ms. Doe has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against her.

74.     She requests liquidated damages under the ADEA.

## COUNT II

Case 1:24-cv-00057-JPJ-PMS     Document 6     Filed 12/05/24     Page 59 of 96
Pageid#: 99

EXHIBIT A

Case 1:24-cv-00057-JPJ-PMS     Document 1-1     Filed 11/15/24     Page 14 of 17
Pageid#: 18

EXHIBIT A

## Age Discrimination in Violation of the VHRA

75.     Ms. Doe incorporates all prior allegations as if fully stated herein.

76.     Ms. Doe was an employee over 40 years of age at the University, entitling her to rights under the Virginia Human Rights Act.

77.     The University is required to abide by ADEA's prohibition on age discrimination.

78.     The University discriminated against Ms. Doe on the basis of age by terminating her in violation of federal law and its policies and then replacing her with a younger employee.

79.     Ms. Doe is protected by VHRA from discrimination on the basis of her age.

80.     Ms. Doe was qualified for her position at the University.

81.     Ms. Doe suffered adverse employment actions, including but not limited to her firing.

82.     She was replaced by a younger employee.

83.     There is no legitimate nondiscriminatory reason for the University's behavior.

84.     Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

85.     Ms. Doe has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against her.

13

**EXHIBIT A**

**EXHIBIT A**

86.     She seeks compensatory and punitive damages, and any other available relief, under the VHRA.

## COUNT III
### Negligence *Per Se*

87.     Ms. Doe incorporates all prior allegations as if fully stated herein.

88.     The United States Department of Education promulgated regulations interpreting Title IX, codified at 34 C.F.R. 106, titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance."

89.     34 C.F.R. 106 is a binding regulation on the University.

90.     34 C.F.R. 106 was enacted for public safety. Specifically, the regulations were designed to both protect victims of sexual harassment and to protect students and faculty accused of sexual harassment.

91.     Ms. Doe, as a faculty member, belonged to the class of persons the regulations were designed to protect.

92.     The University's violations of 34 C.F.R. 106 were a proximate cause of the injury to Ms. Doe, because the violations produced the harm to Ms. Doe and no efficient intervening cause exists that would have caused the harm to Ms. Doe.

93.     As a result of the University's breach of 34 C.F.R. 106, Ms. Doe suffers and continues to suffer substantial financial harm. Accordingly, Ms. Doe requests compensatory, incidental, and emotional damages.

## COUNT IV
### Negligence

94.     Ms. Doe incorporates all prior allegations as if fully stated herein.

Case 1:24-cv-00057-JPJ-PMS   Document 6   Filed 12/05/24   Page 61 of 96
Pageid#: 101
Case 1:24-cv-00057-JPJ-PMS   Document 1-1   Filed 11/15/24   Page 16 of 17
Pageid#: 20

EXHIBIT A
EXHIBIT A

95.   In choosing to accept federal funding and adjudicate matters of sexual misconduct, the University assumed a duty to conduct its sexual misconduct proceedings with reasonable care under the circumstances, to avoid foreseeable harm to students or faculty subject to its procedures.

96.   It was foreseeable that Ms. Doe would be harmed by the University's complete and total disregard of its own Title IX procedures.

97.   The University breached its duty to Ms. Doe when it subjected her to the Title IX process and failed to abide by its own procedures, and otherwise conducted itself in a biased or partial manner.

98.   The University's action was a proximate cause of Ms. Doe's injury, because Ms. Doe's injury would not have occurred absent the University's action, and because no efficient intervening cause exists that would have caused the harm to Ms. Doe.

99.   As a result of the University's breach of its duty, Ms. Doe suffers and continues to suffer substantial financial harm. Accordingly, Ms. Doe requests compensatory, incidental, and emotional damages.

## JURY DEMAND

100.   Doe demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE Doe respectfully requests that this Court grant him the following relief against all Defendants:

15

59

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 62 of 96
Pageid#: 102
Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 17 of 17
Pageid#: 21

**EXHIBIT A**
**EXHIBIT A**

1. Liquidated damages under the ADEA;

2. Other damages in an amount to be proved at trial;

3. Costs of suit;

4. Attorneys' fees, pursuant to 42 U.S.C § 1988(b); and

5. Such other and further relief as the Court deems necessary and proper.

Dated:  October 22, 2024                    Jane Doe
                                            By Counsel

                                            BINNALL LAW GROUP, PLLC


                                            Benjamin North, VSB No. 97439
                                            Lindsay R. McKasson, VSB No. 96074
                                            717 King Street, Suite 200
                                            Alexandria, Virginia 22314
                                            Phone: (703) 888-1943
                                            Fax: (703) 888-1930
                                            Email: ben@binnall.com
                                                    lindsay@binnall.com

                                            *Counsel for Plaintiff Jane Doe*

16

**EXHIBIT A**

**EXHIBIT B**

**V I R G I N I A :**

### IN THE CIRCUIT COURT FOR WASHINGTON COUNTY

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CL24001888-00 |
| | ) | |
| EMORY AND HENRY UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on November 15, 2024, Defendant, Emory and Henry University, by counsel, filed a Notice of Removal of the above-styled action with the United States District Court for the Western District of Virginia, Abingdon Division (the "**District Court**"). A true and accurate copy of the Notice of Removal filed with the District Court is attached hereto as **Exhibit A**.

DATED:  November 15, 2024                  EMORY AND HENRY COLLEGE

_____
                                                     Counsel

Mary Elizabeth Davis (VSB No. 41908)
Caitlin E. Tobin (VSB No. 98432)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Two James Center
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone:      (804) 799-7864
Facsimile:      (804) 977-3294
E-mail:      bdavis@whitefordlaw.com
E-mail:      ctobin@whitefordlaw.com

*Counsel for Defendant Emory and Henry University*

61

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 64 of 96
Pageid#: 104
Case 1:24-cv-00057-JPJ-PMS    Document 1-2    Filed 11/15/24    Page 2 of 2
Pageid#: 23

**EXHIBIT A**

**EXHIBIT B**

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, a true and accurate copy of the foregoing

*Notice of Filing of Notice of Removal* was sent by electronic mail and first-class mail, postage

prepaid, to:

> Benjamin North (VSB No. 97439)
> Lindsay R. McKasson (VSB No. 96074)
> Binnall Law Group
> 717 King Street, Suite 200
> Alexandria, Virginia  22314
> Telephone:     (703) 888-1943
> Facsimile:     (703) 888-1930
> Email:          ben@binnall.com
>                 lindsay@binnall.com
>
> *Counsel for Plaintiff Jane Doe*

_____
Mary Elizabeth Davis

62

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 65 of 96
Pageid#: 105
Case 1:24-cv-00057-JPJ-PMS    Document 1-3    Filed 11/15/24    Page 1 of 2
Pageid#: 24

**EXHIBIT A**

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jane Doe | Emory & Henry University |

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant  Washington County |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Benjamin North\|Lindsay R. McKasson\|Binnall Law Group\| 717 King Street, Suite 200\|Alexandria, VA  22314\| 703-888-1943 | Mary Elizabeth Davis\|Caitlin E. Tobin\|Whiteford, Taylor & Preston L.L.P.\|1021 E. Cary Street, Suite 2001\|Richmond, VA 23219\|804-799-7864 |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                             *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*          Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 621-634 and 20 U.S.C. § 1681

Brief description of cause:
Removal of claims for alleged Title IX and other state law claims

**VII. REQUESTED IN COMPLAINT:**

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   [x] Yes   [ ] No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*

JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 11/15/2024 | /s/ Mary Elizabeth Davis |

**FOR OFFICE USE ONLY**

| RECEIPT #  AVAWDC 4554085 | AMOUNT  $405.00 | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|



**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44**

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

64

Received & Filed on 11/15/2024 7:10 PM By User: jawright Circuit Court Clerk's Office-Washington County, VA Tricia Moore, Clerk

**V I R G I N I A :**

## IN THE CIRCUIT COURT FOR WASHINGTON COUNTY

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )      Case No. CL24001888-00 |
| | ) |
| EMORY AND HENRY UNIVERSITY, | ) |
| | ) |
|     Defendant. | ) |

### NOTIFICATION OF SERVICE OF
### NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on November 15, 2024, Defendant, Emory and Henry University, served the attached Notice of Filing of Notice of Removal upon Plaintiff, Jane Doe. Defendant's filing of the attached Notice in this Court effects the removal of this action, under 28 U.S.C. § 1446(d), to the United States District Court for the Western District of Virginia, Abingdon Division. Under 28 U.S.C. § 1446(d), this action shall proceed no further in the Circuit Court for Washington County unless and until this case is remanded.

DATED: November 15, 2024

EMORY AND HENRY UNIVERSITY

_____
                            Counsel

Mary Elizabeth Davis (VSB No. 41908)
Caitlin E. Tobin (VSB No. 98432)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Two James Center
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone:    (804) 799-7864
Facsimile:    (804) 977-3294
E-mail:      bdavis@whitefordlaw.com
E-mail:      ctobin@whitefordlaw.com

*Counsel for Defendant Emory and Henry University*

65

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2024, a true and accurate copy of the foregoing

*Notification of Service of Notice of Filing of Notice of Removal* was sent by electronic mail and

first-class mail, postage prepaid, to:

> Benjamin North (VSB No. 97439)
> Lindsay R. McKasson (VSB No. 96074)
> Binnall Law Group
> 717 King Street, Suite 200
> Alexandria, Virginia  22314
> Telephone:    (703) 888-1943
> Facsimile:    (703) 888-1930
> Email:        ben@binnall.com
>               lindsay@binnall.com
>
> *Counsel for Plaintiff Jane Doe*

_____

Mary Elizabeth Davis

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR WASHINGTON COUNTY

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CL24001888-00 |
| | ) | |
| EMORY AND HENRY UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>NOTICE OF FILING OF NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that on November 15, 2024, Defendant, Emory and Henry University, by counsel, filed a Notice of Removal of the above-styled action with the United States District Court for the Western District of Virginia, Abingdon Division (the "**<u>District Court</u>**"). A true and accurate copy of the Notice of Removal filed with the District Court is attached hereto as **<u>Exhibit A</u>**.

DATED: November 15, 2024

EMORY AND HENRY COLLEGE

_____
Counsel

Mary Elizabeth Davis (VSB No. 41908)
Caitlin E. Tobin (VSB No. 98432)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Two James Center
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone:     (804) 799-7864
Facsimile:      (804) 977-3294
E-mail:          bdavis@whitefordlaw.com
E-mail:          ctobin@whitefordlaw.com

*Counsel for Defendant Emory and Henry University*

67

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2024, a true and accurate copy of the foregoing

*Notice of Filing of Notice of Removal* was sent by electronic mail and first-class mail, postage

prepaid, to:

> Benjamin North (VSB No. 97439)
> Lindsay R. McKasson (VSB No. 96074)
> Binnall Law Group
> 717 King Street, Suite 200
> Alexandria, Virginia  22314
> Telephone:    (703) 888-1943
> Facsimile:    (703) 888-1930
> Email:    ben@binnall.com
>         lindsay@binnall.com
>
> *Counsel for Plaintiff Jane Doe*

_____
Mary Elizabeth Davis

68

**EXHIBIT A**

CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

November 15, 2024

LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

JANE DOE,                              )
                                       )
    Plaintiff,              )
                                       )
v.                                     )          Civil Action No. <u>1:24cv57</u>
                                       )
EMORY & HENRY UNIVERSITY,              )
                                       )
    Defendant.              )

**NOTICE OF REMOVAL**

Defendant, Emory & Henry University (the "**University**" or "**Defendant**"), by counsel,

pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, petitions this Court for removal of an action

instituted by Jane Doe ("**Doe**" or "**Plaintiff**"), in the Circuit Court for Washington County, styled

*Jane Doe v. Emory and Henry University* (Case No. CL24001888-00) (the "**State Court Action**").

In support of this Notice, Defendant respectfully states as follows:

**BACKGROUND**

1.      On October 22, 2024, Plaintiff commenced this action by filing a Complaint in the

Circuit Court for Washington County.

2.      In compliance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders

served upon Defendant are attached hereto as **Exhibit A**.

**TIMELINESS OF REMOVAL AND VENUE**

3.      The University was served with process in the State Court Action on October 29,

2024.

69

4.      The removal of the State Court Action is timely because, pursuant to 28 U.S.C. §
1446(b), this Notice of Removal has been filed within thirty (30) days after the University was
served with process.

5.      This Court is the proper venue for removal under 28 U.S.C. § 1441(a) because it is
the federal district court that embraces the Circuit Court for Washington County, where the State
Court Action was filed and is pending.

## GROUNDS FOR REMOVAL

6.      The four-count Complaint alleges that the University violated the Age
Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (the "**ADEA**"); that the University
violated the Virginia Human Rights Act (the "**VHRA**"); and claims of negligence and negligence
per se related to the University's process and procedures under Title IX of the Education Act of
1972, 20 U.S.C. §§ 1681 *et seq.* ("**Title IX**").

7.      This Court has original jurisdiction over Plaintiff's federal question claim and
supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1331 (declaring that
the district courts have original jurisdiction of all civil actions arising under the laws of the United
States); 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original
jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are
so related to claims in the action within such original jurisdiction that they form part of the same
case or controversy.").

8.      This Court has original jurisdiction over Plaintiff's federal question claim under the
ADEA, as this claim arises under the laws of the United States.  *See* 28 U.S.C. § 1331.

9.      This Court has supplemental jurisdiction over Plaintiff's state law claims for
violation of the VHRA, negligence per se, and negligence, as they are based on the same set of

facts as the federal claim and, thus, form part of the same case or controversy as Plaintiff's ADEA

claim.  *See* 28 U.S.C. § 1367(a).

10.    Accordingly, removal to this Court is proper pursuant to 28 U.S.C. §§ 1331,

1367(a), and 1441(a).

## NOTICE TO PLAINTIFF AND STATE COURT

11.    Pursuant to 28 U.S.C. § 1446(d), the University, by and through the undersigned

counsel, is contemporaneously filing a copy of this Notice of Removal with the Clerk of the Circuit

Court of Washington County (the "Notice of Filing of Notice of Removal").  A true and correct

copy of the Notice of Filing of Notice of Removal is attached hereto as **Exhibit B**.

12.    This Notice of Removal is also being served on Plaintiff's counsel pursuant to 28

U.S.C. § 1446(d).

WHEREFORE, Defendant, Emory & Henry University, hereby removes the State Court

Action to the United States District Court for the Western District of Virginia, Abingdon Division,

and respectfully requests that this Court assume jurisdiction over this civil action.

DATED:  November 15, 2024                    EMORY & HENRY UNIVERSITY


By:    */s/ Mary Elizabeth Davis*
Mary Elizabeth Davis (VSB No. 41908)
Caitlin E. Tobin (VSB No. 98432)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Two James Center
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone:    (804) 799-7864
Facsimile:    (804) 977-3294
E-mail:        bdavis@whitefordlaw.com
E-mail:        ctobin@whitefordlaw.com

*Counsel for Defendant Emory & Henry
University*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 15, 2024, I electronically filed the foregoing with the

Clerk of Court via the CM/ECF System which will send notification of such filing to those

registered to receive electronic notices via email transmission at the email addresses provided by

them, and also sent a copy to counsel for Plaintiff, Jane Doe, at the address stated below, via

electronic mail and U.S. mail, postage prepaid, on November 15, 2024, to:

> Benjamin North (VSB No. 97439)
> Lindsay R. McKasson (VSB No. 96074)
> Binnall Law Group
> 717 King Street, Suite 200
> Alexandria, Virginia  22314
> Telephone:      (703) 888-1943
> Facsimile:       (703) 888-1930
> Email:            ben@binnall.com
>                        lindsay@binnall.com
>
> *Counsel for Plaintiff Jane Doe*

>    */s/ Mary Elizabeth Davis*
> Mary Elizabeth Davis

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 75 of 96
Pageid#: 115
Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 1 of 17
Pageid#: 5

**EXHIBIT A**

# COMMONWEALTH OF VIRGINIA



WASHINGTON CIRCUIT COURT
Civil Division
189 EAST MAIN STREET
ABINGDON  VA  24210
(276) 676-6224

Summons

To: EMORY & HENRY UNIVERSITY
C/O MARK GRAHAM (RA)
30461 GARNAND DR
EMORY VA 24327

Case No. 191CL24001888-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Wednesday, October 23, 2024

Clerk of Court:  PATRICIA S. MOORE

by _____
(CLERK/DEPUTY CLERK )

Instructions:     COMPLAINT

Hearing Official:

Attorney's name:     NORTH, BENJAMIN F
717 KING ST SUITE 300
ALEXANDRIA VA 22314

73

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR WASHINGTON COUNTY

FILED

OCT 22 2024

DEPUTY CLERK CIRCUIT COURT
WASHINGTON COUNTY, VA

|  |  |
|---|---|
| **JANE DOE,** | |
| **Plaintiff,** | |
| **v.** | Case No. 24-1888 |
| | **JURY TRIAL DEMANDED** |
| **EMORY & HENRY UNIVERSITY,** | |
| c/o Mark R. Graham (registered agent) | |
| 30461 Garnand Drive, | |
| Emory, Virginia 24327-2500, | |
| **Defendant.** | |

## COMPLAINT

Emory & Henry University did not want sixty year old equestrian coach – it wanted one thirty years younger. The University desperately wanted a pretext that it could use to replace Plaintiff with a younger employee, and finally got what it wanted when a false Title IX complaint was filed against Ms. Doe. When the University was already communicating about her replacement, the University received this complaint and jumped into action, terminating Ms. Doe within days of receiving the complaint. In doing so, the University completely ignored federal regulations enforcing Title IX and instead summarily terminated her. Accordingly, Ms. Doe brings this civil action against Defendant for violations of the Age Discrimination in Employment Act ("ADEA"), the Virginia Human Rights Act ("VHRA"), negligence, and negligence *per se*. For her Complaint against Defendant, Jane Doe states as follows:

74

Case 1:24-cv-00057-JPJ-PMS     Document 6     Filed 12/05/24     Page 77 of 96
Pageid#: 117

**EXHIBIT A**

Case 1:24-cv-00057-JPJ-PMS     Document 1-1     Filed 11/15/24     Page 3 of 17
Pageid#: 7

**EXHIBIT A**

<u>**Parties**</u>

1.      Jane Doe ("Ms. Doe") was an assistant clinical professor or equine studies at the University. She is sixty-one years old.

2.      Emory & Henry University (the "University") is a private higher education institution located in Washington County, Virginia.

<u>**Jurisdiction and Venue**</u>

3.      Subject matter jurisdiction is proper in the Commonwealth of Virginia and the Circuit Court of Washington County because the amount in controversy exceeds $25,000.

4.      This Court possesses personal jurisdiction over the University by virtue of its domicile and its transacting business in the Commonwealth. Va. Code § 8.01-328.1(A).

5.      Venue is proper in this Court because all causes of action arose in Washington County, Virginia. Va. Code § 8.01-262.

<u>**The University's Background**</u>

6.      Institutions of higher education are required by law, as interpreted by the United States Supreme Court, to adjudicate claims of sexual harassment under the auspices of Title IX.

7.      Title IX is a federal statute prohibiting discrimination on the basis of sex for all persons in educational institutions that receive federal funding. *See* 20 U.S.C. § 1681.

2

Case 1:24-cv-00057-JPJ-PMS     Document 6     Filed 12/05/24     Page 78 of 96
Pageid#: 118

**EXHIBIT A**

Case 1:24-cv-00057-JPJ-PMS     Document 1-1     Filed 11/15/24     Page 4 of 17
Pageid#: 8

**EXHIBIT A**

8.     The University receives federal funding. Withdrawal of federal funding by the U.S. Department of Education would be financially ruinous for the University.

9.     The University maintains a Title IX Office.

10.     The University's Title IX personnel, including Title IX Coordinator Yancey Wilmoth, received training on the controlling Title IX regulations.

11.     The University's Human Resources Office, including Director of Human Resources Tracy Peery, also received training on the controlling Title IX regulations.

**Federal Title IX Regulations and University Policy**

12.     In May of 2020, the U.S. Department of Education promulgated regulations interpreting Title IX, codified at 34 C.F.R. 106, titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance."

13.     The U.S. Department of Education interpreted the effective date to mean that the regulations applied to all reports of sexual harassment (construed broadly to include allegations of sexual assault and other offenses) concerning conduct occurring on or after August 14, 2020.

14.     The federal regulations applied to this matter because, among other things, John Roe alleged conduct occurring exclusively in the year 2023.

15.     The federal regulations set forth procedural requirements for the University's adjudication of Title IX matters. Accordingly, the University is required by the regulations to adopt these procedural provisions in its own policies and procedures, for use in student-on-student sexual misconduct complaints.

3

Case 1:24-cv-00057-JPJ-PMS     Document 6     Filed 12/05/24     Page 79 of 96
Pageid#: 119

Case 1:24-cv-00057-JPJ-PMS     Document 1-1     Filed 11/15/24     Page 5 of 17
Pageid#: 9

EXHIBIT A
EXHIBIT A

16.    The University adopted the regulations' procedural requirements, as reflected in the University's "Title IX and Sexual Harassment Policy" ("Policy"), which states that the Policy is intended to "meet the University's obligations" under Title IX.

17.    Therefore, the University is not at liberty to substantially alter its Policy without federal regulatory change. Rather, in exchange for federal funding and the payment of tuition by students (without which the University would not exist or be in a position to receive federal funding), the University has agreed to be bound by its regulation-compliant Policy.

18.    Under the 2020 regulations, the University is obligated to respond to a "formal complaint" of sexual harassment in a way compliant with the grievance process outlined in 34 C.F.R. §106.45.

19.    The term "formal complaint" is defined by 34 C.F.R. §106.30 as, in relevant part, "a document filed by a complainant or signed by the Title IX Coordinator alleging sexual harassment against a respondent and requesting that the recipient investigate the allegation of sexual harassment."

20.    The Department requires that a "formal complaint" be filed, and the grievance process at 34 C.F.R. §106.45 be completed, before "the imposition of any disciplinary sanctions or other actions that are not supportive measures." 34 C.F.R. §106.44(a).

21.    The 34 C.F.R. 106.45 grievance process, in the context of postsecondary educational institutions receiving federal funding, requires that a University provide

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 80 of 96
Pageid#: 120
Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 6 of 17
Pageid#: 10

**EXHIBIT A**
**EXHIBIT A**

formal notice of the allegations against the respondent before any investigation, generate an investigative report, hold a live hearing with cross examination, and contain an appeal process before any discipline is imposed, among other things. *See generally* 34 C.F.R. §106.45(b).

22.    "Each of the procedural requirements in § 106.45 is prescribed because the Department views the requirement as important to ensuring a fair process for both parties rooted in the fundamental due process principles of notice and meaningful opportunities to be heard." 85 Fed. Reg. 30053.

23.    The term "formal complaint" has a static and defined meaning. If, for example, a recipient of federal funds could avoid the requirements of 34 C.F.R. §106.45 simply by labeling a complaint "informal," the entire regulatory scheme would unravel. Any college or university could use this method to simply avoid ever using the 34 C.F.R. §106.45 grievance process.

### Background of Ms. Doe and John Roe

24.    Following a professional equestrian career, Ms. Doe began employment at the University in the Spring of 2023 as an assistant clinical professor in the equestrian program.

25.    Ms. Doe replaced an employee who repeatedly drank to excess on the job but was never disciplined.

26.    Ms. Doe never received any negative performance reviews during the entirety of her employment at the University.

Case 1:24-cv-00057-JPJ-PMS     Document 6     Filed 12/05/24     Page 81 of 96
Pageid#: 121

**EXHIBIT A**

Case 1:24-cv-00057-JPJ-PMS     Document 1-1     Filed 11/15/24     Page 7 of 17
Pageid#: 11

**EXHIBIT A**

27.    Ms. Doe thoroughly enjoyed teaching and built positive relationships with all of her students, absent any complaints from any of her students.

28.    John Roe was one of many students, male and female, who had a friendly professional relationship with Ms. Doe.

29.    John Roe was somewhat of a class clown whose company was enjoyed by other students and Ms. Doe. He frequently made jokes with his fellow students and Ms. Doe.

### The Anonymous Title IX Complaint

30.    According to the University, on or around October 27, 2023, an employee at the University submitted an Title IX complaint against Ms. Doe.

31.    On October 31, 2023, the University sent Ms. Doe an email seeking an interview related to the "informal complaint of sexual harassment." The University did not tell Ms. Doe the substance of the complaint or who made the complaint. Eventually, however, she would discover that the complaint alleged that John Roe had been made "uncomfortable" by texts and "photos" from Ms. Doe.

32.    John Roe never filed any complaint himself.

33.    Nor did Ms. Doe ever send any sexual or inappropriate texts or photos (or anything else sexual whatsoever) to John Roe or any other student. While she texted many of her students and sent equestrian related photos, there was never anything remotely sexual about any of Ms. Doe's behavior with her students.

### The University Conducts its "Informal" Investigation For A Week

6

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 82 of 96
Pageid#: 122
Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 9 of 17
Pageid#: 12

EXHIBIT A
EXHIBIT A

34.     Ms. Doe sat for an interview on November 1, 2023. At that interview, both Yancey Wilmoth and Tracy Peery were present.

35.     Both Wilmoth and Peery, having been trained in Title IX, knew that the "notice" sent to Ms. Doe seeking the interview was not complaint with federal regulations interpreting Title IX.

36.     In fact, Wilmoth and Peery referred to the complaint against Ms. Doe as an "informal complaint." But the term "informal complaint" does not appear in University Policy.

37.     The term "informal complaint" is created out of whole cloth for the sole purpose of disclaiming the regulations' requirement that a recipient follow 34 C.F.R. §106.45 in response to a "formal complaint." Wilmoth and Peery, having been trained in Title IX, knew that a "formal complaint" must be adjudicated according to 34 C.F.R. §106.45, and they referred to the complaint against Ms. Doe as an "informal complaint" for the sole purpose of avoiding the regulations.

38.     Indeed, according to federal regulation, a Notice of Allegations must, among other things, "include the identities of the parties involved in the incident, if known, [and] the conduct allegedly constituting sexual harassment under § 106.30, and the date and location of the alleged incident, if known." 34 C.F.R. §106.45(b)(2)(B).

39.     Further, "the written notice must inform the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney, under

7

80

Case 1:24-cv-00057-JPJ-PMS     Document 6     Filed 12/05/24     Page 83 of 96
Pageid#: 123

**EXHIBIT A**

Case 1:24-cv-00057-JPJ-PMS     Document 1-1     Filed 11/15/24     Page 9 of 17
Pageid#: 13

**EXHIBIT A**

paragraph (b)(5)(iv) of this section, and may inspect and review evidence under paragraph (b)(5)(vi) of this section." *Id.*

40.     A Notice of Allegations must also "inform the parties of any provision in the recipient's code of conduct that prohibits knowingly making false statements or knowingly submitting false information during the grievance process." *Id.*

41.     The federal government's purpose in drafting §106.45(b)(2) was that "[f]undamental fairness and due process principles require that a respondent knows the details of the allegations made against the respondent, to the extent the details are known, to provide adequate opportunity for the respondent to respond."[1]

42.     The "informal" "notice" contained none of the required elements cited above. Instead, it merely said that due to "the nature of the complaint" Ms. Doe's "presence will … be required" at an interview.

43.     During the interview, Ms. Doe was subjected to treatment that one would find in a Franz Kafka novel. Wilmoth and Peery were extremely hostile towards Ms. Doe; they interrogated her about a complaint where Ms. Doe did not know the details of the complaint. At the same time, they demanded confessions from Ms. Doe and accused her (without evidence) of deleting evidence in bad faith.

44.     At the close of the interview, Ms. Doe offered to provide witnesses, among other things, to Wilmoth and Peery. Wilmoth and Peery told Ms. Doe "that's

---

[1] Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30133 (May 19, 2020).

good" and "that's what you're supposed to be doing." At a minimum, Wilmoth and Peery never instructed Ms. Doe to not reach out to witnesses.

45.    Nor could they, because federal regulations protect Ms. Doe's right to gather and present evidence and witnesses. 34 C.F.R. §106.45(b)(5)(iii) (schools may not restrict the ability of parties to gather evidence).

46.    But when Ms. Doe submitted witnesses to Wilmoth and Peery or was otherwise gathering witnesses and evidence in the days following the interview, Peery reprimanded her. Peery emailed Ms. Doe that she needed to "stop reaching out to students asking them to be witnesses for you." She continued (as if gathering witnesses to support her innocence was a violation in itself): "I have evidence that you have been doing so and have violated the confidentiality of the investigation. Your actions are unprofessional and need to stop."

47.    When Peery sent this email, she knew that Ms. Doe had the right to gather witnesses and that the University could not even prohibit her from discussing the investigation. 34 C.F.R. §106.45(b)(5)(iii). But she chose to intimidate Ms. Doe anyway.

48.    University Policy and federal law afford Ms. Doe the right to be presumed "not responsible" throughout the investigation and adjudication.

49.    Obviously, the University did not presume Ms. Doe not responsible. It presumed her responsible and interrogated her with that presumption in mind.

50.    The University took less than one week to adjudicate the "informal" complaint against Ms. Doe. It found her responsible for the allegation against her.

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 85 of 96
Pageid#: 125

**EXHIBIT A**

Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 11 of 17
Pageid#: 15

**EXHIBIT A**

51.    In a meeting on November 8, 2023, Ms. Doe was notified that she was terminated from employment because of the findings of the investigation. She was immediately escorted by security to clean out her desk, and was marched off of campus.

52.    During the November 8 meeting, Peery insisted (in a transparent attempt to skirt liability) that Ms. Doe was terminated "at will" despite the findings against her.

### Ms. Doe Discovers Additional Context and Exhausts Remedies

53.    After Ms. Doe was terminated, she discovered from at least three witnesses with knowledge that the University intended to replace her with a younger employee before the Title IX allegations were ever made.

54.    Although the University posted the job posting on November 14, 2023, it had communications with Ms. Doe's replacement before the job was posted publicly.

55.    Ms. Doe was indeed replaced by this employee, who is thirty years Ms. Doe's junior.

56.    Ms. Doe filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights on March 7, 2024.

57.    She received a Notice of Right to Sue from the EEOC on July 25, 2024. This Notice also suffices as a Notice of Right to Sue under the VHRA. Va. Code §2.2-3907(I).

### The University Continues to Punish Ms. Doe

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 86 of 96
Pageid#: 126

EXHIBIT A

Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 12 of 17
Pageid#: 16

EXHIBIT A

58.     As a result of the University's wrongful finding and termination, Ms. Doe suffers severe emotional, psychological, and financial harm.

59.     While suffering this harm, and having to deal with the unexpected loss of income, Ms. Doe sought unemployment from the North Carolina Department of Commerce.

60.     As the University had repeatedly told her on November 8, Ms. Doe represented to the North Carolina agency that she had been terminated "at will" and not "for cause." The former would entitle her to unemployment income whereas the latter would not.

61.     In a remarkable showing of contempt towards Ms. Doe, the University opposed Ms. Doe's request for unemployment. At a hearing, counsel for the University testified and argued for the first time that Ms. Doe was not terminated "at will" and instead because she sexually harassed a student.

62.     Appearing pro se, Ms. Doe testified at the hearing, and successfully obtained unemployment income. The North Carolina agency further made findings of fact that, among other things, "[Ms. Doe] did not sexually harass anyone during her tenure at with Emory & Henry College."


### CAUSES OF ACTION

### COUNT I
### Age Discrimination in Violation of the ADEA


63.     Ms. Doe incorporates all prior allegations as if fully stated herein.

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 87 of 96
Pageid#: 127
Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 12 of 17
Pageid#: 17

EXHIBIT A
EXHIBIT A

64.    Ms. Doe was an employee over 40 years of age at the University, entitling her to rights under the federal Age Discrimination in Employment Act ("ADEA").

65.    The University is required to abide by ADEA's prohibition on age discrimination.

66.    The University discriminated against Ms. Doe on the basis of age by terminating her in violation of federal law and its policies and then replacing her with a younger employee.

67.    Ms. Doe is protected by ADEA from discrimination on the basis of her age.

68.    Ms. Doe was qualified for her position at the University.

69.    Ms. Doe suffered adverse employment actions, including but not limited to her firing.

70.    She was replaced by a younger employee.

71.    There is no legitimate nondiscriminatory reason for the University's behavior.

72.    Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

73.    Ms. Doe has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against her.

74.    She requests liquidated damages under the ADEA.

## COUNT II

12

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 88 of 96
Pageid#: 128

EXHIBIT A

Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 14 of 17
Pageid#: 18

EXHIBIT A

### Age Discrimination in Violation of the VHRA

75. Ms. Doe incorporates all prior allegations as if fully stated herein.

76. Ms. Doe was an employee over 40 years of age at the University, entitling her to rights under the Virginia Human Rights Act.

77. The University is required to abide by ADEA's prohibition on age discrimination.

78. The University discriminated against Ms. Doe on the basis of age by terminating her in violation of federal law and its policies and then replacing her with a younger employee.

79. Ms. Doe is protected by VHRA from discrimination on the basis of her age.

80. Ms. Doe was qualified for her position at the University.

81. Ms. Doe suffered adverse employment actions, including but not limited to her firing.

82. She was replaced by a younger employee.

83. There is no legitimate nondiscriminatory reason for the University's behavior.

84. Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

85. Ms. Doe has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against her.

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 89 of 96
Pageid#: 129

EXHIBIT A

Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 15 of 17
Pageid#: 19

EXHIBIT A

86.    She seeks compensatory and punitive damages, and any other available relief, under the VHRA.

### COUNT III
### Negligence *Per Se*

87.    Ms. Doe incorporates all prior allegations as if fully stated herein.

88.    The United States Department of Education promulgated regulations interpreting Title IX, codified at 34 C.F.R. 106, titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance."

89.    34 C.F.R. 106 is a binding regulation on the University.

90.    34 C.F.R. 106 was enacted for public safety. Specifically, the regulations were designed to both protect victims of sexual harassment and to protect students and faculty accused of sexual harassment.

91.    Ms. Doe, as a faculty member, belonged to the class of persons the regulations were designed to protect.

92.    The University's violations of 34 C.F.R. 106 were a proximate cause of the injury to Ms. Doe, because the violations produced the harm to Ms. Doe and no efficient intervening cause exists that would have caused the harm to Ms. Doe.

93.    As a result of the University's breach of 34 C.F.R. 106, Ms. Doe suffers and continues to suffer substantial financial harm. Accordingly, Ms. Doe requests compensatory, incidental, and emotional damages.

### COUNT IV
### Negligence

94.    Ms. Doe incorporates all prior allegations as if fully stated herein.

14

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 90 of 96
Pageid#: 130
Case 1:24-cv-00057-JPJ-PMS    Document 1-1    Filed 11/15/24    Page 16 of 17
Pageid#: 20

EXHIBIT A
EXHIBIT A

95.     In choosing to accept federal funding and adjudicate matters of sexual misconduct, the University assumed a duty to conduct its sexual misconduct proceedings with reasonable care under the circumstances, to avoid foreseeable harm to students or faculty subject to its procedures.

96.     It was foreseeable that Ms. Doe would be harmed by the University's complete and total disregard of its own Title IX procedures.

97.     The University breached its duty to Ms. Doe when it subjected her to the Title IX process and failed to abide by its own procedures, and otherwise conducted itself in a biased or partial manner.

98.     The University's action was a proximate cause of Ms. Doe's injury, because Ms. Doe's injury would not have occurred absent the University's action, and because no efficient intervening cause exists that would have caused the harm to Ms. Doe.

99.     As a result of the University's breach of its duty, Ms. Doe suffers and continues to suffer substantial financial harm. Accordingly, Ms. Doe requests compensatory, incidental, and emotional damages.

## JURY DEMAND

100.    Doe demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE Doe respectfully requests that this Court grant him the following relief against all Defendants:

15

Case 1:24-cv-00057-JPJ-PMS   Document 6   Filed 12/05/24   Page 91 of 96
Pageid#: 131

Case 1:24-cv-00057-JPJ-PMS   Document 1-1   Filed 11/15/24   Page 17 of 17
Pageid#: 21

EXHIBIT A

EXHIBIT A

1. Liquidated damages under the ADEA;

2. Other damages in an amount to be proved at trial;

3. Costs of suit;

4. Attorneys' fees, pursuant to 42 U.S.C § 1988(b); and

5. Such other and further relief as the Court deems necessary and proper.


Dated:  October 22, 2024                    Jane Doe
                                            By Counsel

                                            BINNALL LAW GROUP, PLLC



                                            Benjamin North, VSB No. 97439
                                            Lindsay R. McKasson, VSB No. 96074
                                            717 King Street, Suite 200
                                            Alexandria, Virginia 22314
                                            Phone: (703) 888-1943
                                            Fax: (703) 888-1930
                                            Email: ben@binnall.com
                                                   lindsay@binnall.com

                                            *Counsel for Plaintiff Jane Doe*

16

89

**EXHIBIT A**

**EXHIBIT B**

**V I R G I N I A :**

### IN THE CIRCUIT COURT FOR WASHINGTON COUNTY

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CL24001888-00 |
| | ) | |
| EMORY AND HENRY UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on November 15, 2024, Defendant, Emory and Henry University, by counsel, filed a Notice of Removal of the above-styled action with the United States District Court for the Western District of Virginia, Abingdon Division (the "**District Court**"). A true and accurate copy of the Notice of Removal filed with the District Court is attached hereto as **Exhibit A**.

DATED:  November 15, 2024

EMORY AND HENRY COLLEGE

_____
Counsel

Mary Elizabeth Davis (VSB No. 41908)
Caitlin E. Tobin (VSB No. 98432)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Two James Center
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone:    (804) 799-7864
Facsimile:    (804) 977-3294
E-mail:    bdavis@whitefordlaw.com
E-mail:    ctobin@whitefordlaw.com

*Counsel for Defendant Emory and Henry University*

Case 1:24-cv-00057-JPJ-PMS    Document 6    Filed 12/05/24    Page 93 of 96
Pageid#: 133
Case 1:24-cv-00057-JPJ-PMS    Document 1-2    Filed 11/15/24    Page 2 of 2
Pageid#: 23

**EXHIBIT A**

**EXHIBIT B**

### CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, a true and accurate copy of the foregoing

*Notice of Filing of Notice of Removal* was sent by electronic mail and first-class mail, postage

prepaid, to:

> Benjamin North (VSB No. 97439)
> Lindsay R. McKasson (VSB No. 96074)
> Binnall Law Group
> 717 King Street, Suite 200
> Alexandria, Virginia  22314
> Telephone:     (703) 888-1943
> Facsimile:      (703) 888-1930
> Email:          ben@binnall.com
>                 lindsay@binnall.com
>
> *Counsel for Plaintiff Jane Doe*

_____
Mary Elizabeth Davis

**EXHIBIT A**

Case 1:24-cv-00057-JPJ-PMS    Document 1-3    Filed 11/15/24    Page 1 of 2
Pageid#: 24

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jane Doe | Emory & Henry University |

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant Washington County |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Benjamin North\|Lindsay R. McKasson\|Binnall Law Group\| 717 King Street, Suite 200\|Alexandria, VA  22314\| 703-888-1943 | Mary Elizabeth Davis\|Caitlin E. Tobin\|Whiteford, Taylor & Preston L.L.P.\|1021 E. Cary Street, Suite 2001\|Richmond, VA 23219\|804-799-7864 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine / [ ] 368 Asbestos Personal | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability / Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | / [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | / [ ] 550 Civil Rights | | | |
| | / [ ] 555 Prison Condition | | | |
| | / [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 621-634 and 20 U.S.C. § 1681

Brief description of cause:
Removal of claims for alleged Title IX and other state law claims

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*    JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 11/15/2024 | /s/ Mary Elizabeth Davis |

**FOR OFFICE USE ONLY**

| RECEIPT #  AVAWDC 4554085 | AMOUNT  $405.00 | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|



**EXHIBIT A**

### INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION **FILED**

**NOV 2 6 2024**

DEPUTY CLERK CIRCUIT COURT
WASHINGTON COUNTY, VA

CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

November 15, 2024
LAURA A. AUSTIN, CLERK
BY: **/s/ Kendra Campbell**
DEPUTY CLERK

JANE DOE,                          )
                                   )
           Plaintiff,              )    Case No. 1:24cv57
                                   )    State Court No. CL24001888-00
v.                                 )
                                   )           **O R D E R**
EMORY & HENRY UNIVERSITY,          )
                                   )
           Defendant.              )

This case was recently removed from the Circuit Court for Washington County to the

United States District Court for the Western District of Virginia at Abingdon. This court, finding

it necessary and proper to do so, hereby REQUESTS that the original case file in your Court be

forwarded to the Clerk of this court at 180 W. Main Street, Room 104, Abingdon, VA 24210, or

submitted through this court's Case Management and Electronic Case Filing system (CM/ECF).

The Clerk is directed to send a copy of this Order to the Clerk of the Circuit Court for

Washington County.

ENTERED:  November 15, 2024

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

**ECF
DOCUMENT**

I hereby attest and certify that this is a printed copy of
a document that was electronically filed with the
United States District Court for the Western District
of Virginia. Date Filed  11/15/24
By: K. Campbell    Laura A. Austin, Clerk of Court
Deputy Clerk

94